**RAINBO BAKING COMPANY, et al., Appellants,**

v.

**Robbie STAFFORD, Appellee.**

**No. 09–87–169–CV.**

Court of Appeals of Texas, Beaumont.

Jan. 19, 1989.

Rehearing Denied Feb. 15, 1989.

---

Charles K. Kebodeaux, Beaumont, for appellants.

Sid S. Stover, Jasper, for appellee.

OPINION

BROOKSHIRE, Justice.

Automobile collision case. Appellee, Robbie Stafford, was driving a vehicle in a

southerly direction on U.S. Highway 96 in Jasper. The individual Appellant, Christopher Spahn, while working in the course and scope of his employment for Rainbo Baking Company, was operating his truck and collided with the rear end of the vehicle driven by Ms. Stafford. Ms. Stafford filed a negligence and personal injury suit naming Spahn and the baking company as defendants. In a juried proceeding the verdict found Spahn was negligent in connection with his speed, lookout, and in his failure to maintain an assured clear distance. Fifty thousand dollars in damages were awarded for past and future pain and anguish, physical impairment, and household services, as well as medical expenses.

The Appellants' first two points of error contend that there was insufficient evidence to support the amount of damages awarded by the jury and that the damages awarded in the verdict were manifestly unjust and excessive and were the result of passion and prejudice that shocked the conscience. There is evidence that Ms. Stafford suffered from pre-existing degenerative cervical disk disease as well as arthritis.

Ms. Stafford testified that after the collision in question she was unable to do the following activities, inter alia: (1) she could not plow her garden or tend her garden; (2) nor could she enjoy her avocations of fishing and hunting; (3) nor could she complete certain household tasks inasmuch as she was restricted in lifting heavy household items. For example, she could not make cornbread as she had customarily done in a large, heavy, black-iron skillet. She testified that she had suffered physical pain, that she had stomach trouble and that her arthritis had been greatly aggravated. She testified that her pain medication did not always agree with her.

A physician that Ms. Stafford had seen for several years testified. Ms. Stafford classified this physician as her family doctor. He found muscle spasms which he defined as involuntary contractions of muscles. Spasm, the doctor related, generally indicates pain. X-rays were taken. The physician testified that she suffered from degenerative disk disease in the cervical area involving the cervical vertebrae, numbered 4, 5, 6 and 7; and the doctor's opinion was that the X-rays showed that she had a herniated disk in her neck or that a herniated disk could not be ruled out. The doctor took the position that the wreck involved did not cause the degenerative disk disease but that in this case the collision in question caused a lot of aggravation. Upon further questioning the family treating physician testified that in his opinion which was based upon reasonable medical probability that Ms. Stafford had a herniated disk. The doctor felt that this condition produced a lot of pain in his patient.

At the time of trial the physician's diagnosis of Ms. Stafford was that she had an injured neck, a herniated disk, nerve root pressure involving her left arm, that she also had an injury to her upper thoracic vertebrae, some fibromyositis, and that there were some developing problems in her lower back or low back, and that her arthritic condition had been aggravated by the collision. She had discomfort and pain and had become extremely nervous, the doctor stated. The physician had seen his patient, Robbie Stafford, professionally approximately twenty times after and as a result of the collision. The physician testified that at one time in the course of treatment after the collision she had gotten a little bit better. Then she retrogressed. The physician's diagnosis on the date of the trial had not changed and the patient was having considerable pain and discomfort in her left arm and shoulder. Her condition was disabling and the patient had to limit her activities. These conditions of aggravation and pain were permanent, the doctor said.

There is also evidence of a trauma sustained by Ms. Stafford in an accident in 1962. In 1962 she was diagnosed as having a degenerative disk disease as well. The X-rays of September 7, 1962, described a narrowing of C4, C5 and C6 and the prior medical records show that concerning the accident that occurred on July 6, 1962, Ms. Stafford sustained a back injury and a neck injury. Also in October of 1979, there had

been noted in the medical records some arthritic changes in the shoulder as well as in the low back.

We conclude that in this case, considering and analyzing this record—as has been true of literally thousands of cases before it—that the damages were a matter for the jury to resolve. The jury's prerogative was to determine how much of Ms. Stafford's pain, disabilities, and damages arose out of the last collision or were aggravated by it. Trite, stale and hornbook law is that the jury in Texas has a right to weigh the evidence, and indeed, the trial judge instructed them that the jury and the members thereof are the sole judges of the credibility of the witnesses and the weight to be given their testimony. This unequivocal instruction has been mandated by the Supreme Court of Texas and within this rule and mandatory instruction the jury can believe part or all of a witness' testimony. The jury can disbelieve all of a witness' testimony.

The record clearly reveals that the doctor was expertly, thoroughly, and vigorously cross-examined. Ms. Stafford's pre-existing conditions were developed in considerable detail and profound depth. There was a dialogue between the cross-examiner and the physician concerning myelograms as well as an EMG study, which is a type of electronic evaluation of a muscle. Certain other diagnostic tools were inquired about during the cross-examination. One of the tools discussed was a CAT scan. It was revealed to the jury that CAT is an acronym meaning computerized axial tomography. During the skillful, well-prepared, intelligent and searching cross-examination, the cross-examiner put the question straight up to the doctor and asked the doctor:

"Q. ... [A]re you sure that she has a bulging disk ...?

"A. Yes. I'm convinced that she has a bulging disk...."

The doctor repeated that her condition was severe enough to be disabling. We conclude the damages were not the result of passion or prejudice; nor were they excessive; nor were they manifestly unjust. Af-

ter reading and analyzing the entire record we cannot agree that there is insufficient evidence to support the damages.

The driver of the Rainbo Baking Company's truck was called to the stand under the adverse party rule. With candor he testified that he was attempting to change lanes from the outside lane to the inside lane and that he was too close to the vehicle ahead of him and that his truck hit the rear of Ms. Stafford's vehicle. We find in Spahn's testimony:

"Q. So the problem is you allowed your vehicle to get so close to the back end of her vehicle that when you tried to change lanes you hit her; isn't that right?

"A. Yes, sir.

"Q. If you had watched closer, it would never have happened; would it?

"A. Probably not.

"Q. If you had not got so close to her, it wouldn't have happened; would it?

"A. No, sir.

"Q. You just got too close; didn't you?

"A. Yes, sir.

"Q. And she never showed a turn signal; did she?

"A. No, sir.

"Q. She did not jam on her brakes?

"A. No, sir.

"Q. She did not come to a sudden stop in front of you?

"A. No, sir."

This writer must comment the Rainbo Company's truck driver was candid, straightforward, open, and unequivocal.

■ We have carefully analyzed and re-read the entire testimony of Christopher L. Spahn, the driver of the vehicle owned by Rainbo Baking Company. He was in the course and scope of his employment. His testimony is admirably candid. We think the liability issues in the case are clear and are resolved and set at complete rest by his testimony. In view of Spahn's testimony and the balance of the Statement of Facts, we determine that the trial court did not err in admitting into evidence the testimony of the investigating police officer to the effect that there was no reason for the accident to have occurred. The admitting

of this evidence was not error; it certainly was not reversible error. This investigating officer's testimony was merely a shorthand rendition of the facts. 2 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL Sec. 1397 (Texas Practice 3d Ed.1980). The Appellants argue for reversible error in admitting the investigating officer's testimony on this phase of the case. We overrule the same.

■ In the sixth point of error, the Appellants urge reversal of the judgment because the trial court admitted evidence that Spahn pleaded guilty to a traffic citation, contending that the same was not properly authenticated and that this testimony lacked probative force to demonstrate that Spahn had actually made a plea of guilty in person. Under this record we find that this issue was to be determined by a jury. As we read the record, there was some evidence that Spahn pleaded guilty and there was some evidence that his plea of guilty was either in dispute or not regularly recorded. Again, these questions are disputed fact issues. We opine that Ms. Stafford had a right to place in evidence her version of the facts. But again, the liability of Rainbo in the case, we think is so clear, that if any error exists in relationship to the introduction of Spahn's plea of guilty that the same was harmless. It definitely was not reversible error. We reaffirm that no error existed, however.

■ The Appellants contend that investigating officer Christopher, who had thirteen years experience with the police department, should not have been allowed to testify about an emergency or lack thereof or there was no reason for this accident to occur and that there was not anything about the highway or the surrounding conditions which would have brought about any emergency on any driver's part. Firstly, we think that this was a question based on his version of the facts and that it was definitely not a question put to him on the law. Secondly, we think the Appellants' objection is not sound in view of investigating officer Christopher's prior testimony. But more importantly, we think that Rainbo's objection to the question and answer

on the basis that Christopher was not qualified to give an opinion is without merit. We think that an investigating officer of thirteen years experience had knowledge that will be helpful to the jury and aid the jury in their deliberations. 2 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL Sec. 1400 (Texas Practice 3d Ed.1980).

■ The Appellants also maintain that the trial court committed reversible error by permitting into evidence the testimony that Spahn received a traffic citation. This was part of the chain of proof to show the plea of guilty. This evidence would not have been proper standing alone but under this unusual record it was not error; the same was certainly not harmful error. Again, we conclude that the driver of the Rainbo Baking Company truck by his own testimony resolved the liability issues in this case in favor of the plaintiff.

■ In Appellant's brief, a complaint is made concerning the evidence tending to prove that Spahn pleaded guilty.

The clerk and secretary of the Jasper Municipal Court swore that it was part of her job to accept fines for traffic citations. Another duty was to keep custody of the book or record that shows the payments of the fines and the pleas entered thereon. The clerk-secretary further testified that the ticket was a part of her record book and that she had, in her possession at trial, a certified copy of the book and record concerning the collision in question. A plea was noted on the docket sheet and the plea would be written on the ticket. In this case, the plea of Spahn was guilty for failure to control his speed. A fine of $43. was paid.

We think the record reflects that these records were kept as a regular business record of the City of Jasper. Under cross-examination, the secretary-clerk testified that if a person came in and merely paid the ticket without pleading guilty, there would be no notation of any plea; but, if a ticket holder affirmatively pleads guilty then it is listed in her docket book. She further testified that, if a plea is made, it is

taken by the Judge of the Corporation Court, who is the Honorable R.C. Powell. The judge had taken Spahn's plea of guilty in this matter. Although there is some conflict in the secretary-clerk's testimony, we conclude that the citation and the plea of guilty and the record book were inexplicably inter-related and intertwined. The evidence put before the jury, we think, was admissibile and would enable the jury to more accurately weigh the course of events at the municipal court. The jury could arrive at a more accurate conclusion.

The concurring opinion would require that the proponent prove that the guilty plea was made in open court. We opine that, under the ordinary rules of evidence, dealing with admissions and admissions against interest, a plea of guilty would be admissible evidence if taken before the clerk or the judge in chambers rather than in open court.

■ The last point of error urged by the Appellants is that the proffered testimony Ms. Stafford made through a bill of exception concerning the fact that she was a recipient of Medicare should have been admitted and read to the jury. No error is shown here in connection with this testimony.

The correct background of this bill of exception is that during the vigorous, piercing and searching cross-examination of Dr. Dickerson and in response thereto, the doctor opined that Ms. Stafford did not need, in his opinion, a great number of expensive medical tests. The position was then taken by Appellants that since these tests were quite expensive, that gave the right to the Appellants to show that Ms. Stafford was on Medicare. We simply find no error in this brief bill of exception; but, if it were error, we simply say that it was a type of invited error although probably unintended.

■ The Appellants also argue that there was error in the damage issue because the general damage issue asked what sum of money, if any, if paid now in cash would reasonably compensate the plaintiff, Robbie Stafford, for the element of damage of the loss of household services in the past and in the future. It is the Appellants' position that this element of damage was owned by her husband, Mr. Leroy Stafford. Leroy Stafford was not a party to the lawsuit. The record on this element of damage is unusual. The record clearly demonstrates that Robbie worked around her house like a man and worked in her garden like a man using the plow and that she did strenuous work around the house before the collision so that when her husband got off work they could go hunting and fishing together which they both enjoyed. After the collision Robbie did not hunt and could not enjoy fishing. Under this record we are unwilling to say that Leroy alone owned this element of damage exclusively and also to the exclusion of Robbie. Appellants place major reliance on *Whittlesey v. Miller*, 572 S.W.2d 665 (Tex. 1978). We think that the reliance is misplaced. In *Whittlesey* the Supreme Court was concerned with the element of damages known in Texas as loss of consortium which is a concept that is entirely separate and distinct from that of the loss of services or performance of household and domestic duties. As we read *Whittlesey,* the opinion militates against the Appellants. The Supreme Court held that each spouse recovers for losses that are peculiar to the injury sustained by that individual spouse. Indeed, the reasoning and rationale of *Whittlesey,* as well as its holding, is:

> "It is clear that a recovery for personal injuries in Texas, other than that for loss of earning capacity, *is the separate property of that spouse. See Graham v. Franco,* 488 S.W.2d 390 (Tex.1972); Tex.Family Code Ann. sec. 5.01(a)(3); McKnight, *Matrimonial Property,* 26 Sw.L.J. 31, 49 n. 149 (1972).

> "... This result obtains because a personal injury recovery is, as stated above, *the separate property of the spouse recovering it. Section 5.21 of the Texas Family Code states that '[e]ach spouse has the sole management, control, and disposition of his or her separate property.'* " (Emphasis added)

We overrule this point of error.

■ The remaining point concerns the trial judge permitting a witness to testify

who had not been completely identified in pre-trial discovery proceedings. The background facts are that the witness, Linda Tunstill, had recently married. Her address was not known to the plaintiff's attorneys. She was generally known by another surname. Her telephone number was unlisted. We do not discern any attempt to hide or secrete this witness. Linda appeared in court the morning of the trial. There was no abuse of discretion on the part of the trial judge in permitting this witness to take the stand. The court specifically ruled that good cause existed for permitting Linda to take the stand. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex. 1986).

Having considered all of the Appellants' points of error and having reviewed the entire record, we overrule the Appellants' points of error and affirm the judgment below.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result. The majority holds there was no error in introducing evidence of the traffic citation or that the truck driver pleaded guilty. I believe it was error, but agree it was harmless. The general rule is evidence that a party to an automobile collision was given a citation is inadmissible in a civil suit arising out of the incident. *Isaacs v. Plains Transport Co.*, 367 S.W.2d 152, 153 (Tex.1963). A guilty plea is admissible as an admission against interest, *Barrios v. Davis*, 415 S.W.2d 714, 716 (Tex.Civ.App.—Houston 1967, no writ). However, it is the burden of the proponent of the evidence to prove that a guilty plea was made in open court. *Cox v. Bohman*, 683 S.W.2d 757, 758 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The majority does not require the proponent to prove this, only to produce some evidence and then views this as a factual dispute going to the weight to be given the evidence. I analyze it differently. I would hold the proponent must properly prove the guilty plea occurred in open court as a prerequisite to the admission of the evidence. Here, the proponent did not and it was

error to admit evidence of a guilty plea. If it was error to admit evidence of the "guilty" plea, it certainly was error to admit evidence of the citation. With these slight disagreements, I concur in the result.