**FIRST STATE BANK OF MIAMI,**

v.

**Millie FATHEREE.**

**No. 07–89–0417–CV.**

Court of Appeals of Texas, Amarillo.

Feb. 3, 1993.

Rehearing Denied March 12, 1993.

---

Culton Morgan Britain & White, Joe W. Hayes, Charles R. Watson, Jr., Amarillo, for appellant.

Mullin Hoard & Brown, Steven L. Hoard, Jeanette Ahlenius, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

DODSON, Justice.

Appellant First State Bank of Miami (the Bank) instituted an action against appellee Millie Fatheree (Ms. Fatheree) to recover on notes she executed to the Bank. Ms. Fatheree interposed several defenses. Based upon jury findings, the court found that Ms. Fatheree had established four defenses, and rendered a take-nothing judgment against the Bank. We affirm.

On December 10, 1985, Hobart Fatheree asked Ms. Fatheree (his daughter) to come by his office in downtown Pampa, Texas, "to sign some papers." These papers were, in fact, blank promissory notes made payable to the Bank. Ms. Fatheree, unaware of their content and nature, signed the papers as the sole obligor. Mr. Fatheree returned the blank notes to the Bank, whereupon the Bank completed the typewritten portions of the notes, *i.e.* amount financed ($249,012.67 and $85,000.00 respectively), finance charge, due date, etc. The Bank then deposited these funds into

Ms. Fatheree's account. In turn, Mr. Fatheree withdrew the money to repay some outstanding personal debts. The notes, however, went into default. Consequently, the Bank brought suit against Ms. Fatheree to recover on the unpaid notes.

By point of error six, the Bank contends the trial court erred in entering judgment for Ms. Fatheree because (1) the trial court abused its discretion in permitting the defense witnesses to testify, and (2) absent the testimony of the defense witnesses who should not have been allowed to testify due to Ms. Fatheree's failure to timely answer interrogatories requesting her to list her witnesses, there is no evidence to support her affirmative defenses. We disagree.

By letter dated June 19, 1989, Ms. Fatheree requested the instant case be set for trial on August 14, 1989. The Bank served Ms. Fatheree with interrogatories on June 26, 1989, asking her to list each person with knowledge of discoverable information, admissible opinions under Rule 701 of the Texas Rules of Civil Evidence, and each expert witness expected to testify. Ms. Fatheree answered the interrogatories on August 4, 1989, averring that she, Hobart Fatheree, Max Faulkner (President of the Bank), Allen Southmayd, and others had knowledge of facts relating to the litigation.

The trial began as scheduled on August 14, 1989. Thereafter, the Bank filed a motion to exclude the testimony of Ms. Fatheree's witnesses, and brought the motion to the court's attention immediately after resting its case-in-chief. The motion alleged that Ms. Fatheree had failed to answer the Bank's interrogatories within thirty days from the date of service pursuant to Rule 168(4).[1] The Bank asked the trial court to exclude all witnesses pursuant to Rule 215(5).

There was no evidence presented at the hearing on the Bank's motion. Noting that the Bank had not previously filed any mo-

tion to compel or to impose sanctions, and that the answers were only a few days late, Ms. Fatheree's counsel requested the court to overrule the Bank's motion. Counsel said he had answered the Bank's interrogatories as promptly as he could, and asserted there was no authority which required exclusion of the witnesses.

The trial court denied the Bank's motion to exclude the witnesses. The trial judge stated that, had the untimeliness of the answers caused the Bank to suffer any detriment, and had an objection been called to his attention earlier, he would have rescheduled the trial.

 In essence, the Bank claims that Ms. Fatheree's untimely response to the interrogatories subjected her to the mandatory and severe sanction provided by Rule 215(5).[2] We disagree. Sanctions for untimely answers are covered by Rule 215(3). *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 915–16 (Tex.1992). In *Alvarado,* the court said:

> *When a party has failed to timely identify* evidence in response to discovery requests, the trial court has the discretion to postpone the trial and, under Rule 215(3), to impose an appropriate sanction upon the offending party for abuse of the discovery process. Such sanction may be used to compensate the non-offending party for any wasted expense in preparing for trial. Although the trial court should not allow delay to prejudice the nonoffending party, the trial court should ordinarily be able to cure any prejudice by a just imposition of sanctions.

*Id.* (emphasis added). In that regard, we note that the Bank does not claim an abuse of the discovery process and did not request a delay of the proceeding. The Bank simply wanted to exclude Ms. Fatheree's

---

1. All references to the Rules are to the Texas Rules of Civil Procedure, unless otherwise indicated.

2. The sanction for failure to identify a witness is exclusion of the unidentified witness's testimo-

ny. *Sharp v. Broadway Nat. Bank,* 784 S.W.2d 669, 671 (Tex.1990). *See Rainbo Baking Co. v. Stafford,* 764 S.W.2d 379 (Tex.App.—Beaumont 1989), *writ denied per curiam,* 787 S.W.2d 41 (Tex.1990).

witnesses and waited a full day into the trial to press for that sanction.

Paragraph 5 of Rule 215 provides:

> 5. **Failure to Respond to or Supplement Discovery.** *A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.*

The salutary purpose of Rule 215(5) is to require *complete responses* to discovery so as to promote responsible assessment of settlement and prevent trial by ambush. *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d at 914 (emphasis added).

The word "timely" does not appear in the rule and we are not at liberty to add to or change the rule. As the *Alvarado* court said:

> As written, however, Rule 215(5) prescribes a *single action* for *failing* to supplement discovery [and failure to respond] and *we are not free to disregard its plain language. Nor should we revise the rule by opinion.* The Legislature has provided that notice be given before rules amendments become effective.

*Id.* at 915 (emphasis added). The court further stated:

> [In addition, this] Court has structured the rules revision process to encourage advice and comment from the bench and bar, and from the public generally. Any revision in Rule 215(5) should be left to those processes, which are underway. Last year the Court appointed task forces to study the conduct of discovery and the imposition of sanction, and to make recommendations for revisions in the rules. The Court's Rules Advisory Committee, the State Bar's Committee on the Administration of Justice, and other

groups have undertaken similar studies. While these processes are at work, we adhere to the language of the rule and our consistent precedent.

*Id.*

Likewise, we must adhere to the language of the rule as written and refuse to amend the rule by adding "timely" to its first sentence. *See also Smith v. Southwest Feed Yards*, 835 S.W.2d 89, 90 (Tex. 1992) (quoting Rule 215(5) as mandating "exclusion of trial testimony of any [undisclosed] person having knowledge of discoverable matter, unless the court finds that good cause sufficient to require admission exists") (alteration in original). Thus, we conclude that Rule 215(5) does not address *untimely responses* to discovery either explicitly or implicitly. Instead, untimely responses are subject to Rule 215(3). *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d at 915.

In the instant case, Ms. Fatheree neither failed to respond nor violated her duty to supplement. Ms. Fatheree had no duty to supplement until she answered the interrogatories. Rule 166b(6). Ms. Fatheree fully answered the interrogatories, albeit a few days late, and there is no suggestion that her answers needed supplementation. Therefore, she did not violate Rule 166b(6), which prohibits supplementation within thirty days of trial unless good cause is shown. Consequently, the authorities relied upon by the Bank do not apply to Ms. Fatheree, and we will review all of the challenged evidence. We overrule point of error six.

By its third point of error, the Bank claims the trial court erred in rendering judgment for Ms. Fatheree on her defense of fraud. Again, we disagree.

■ In response to special issue number five, the jury determined that Ms. Fatheree "was induced by fraud into signing the promissory notes at issue in this case." In that regard the trial court instructed the jury "that fraud is the successful employment of cunning, deception, or artifice to circumvent, cheat, or defraud another to her injury." The Bank asserts the trial court erred by rendering judgment for Ms.

Fatheree because neither the instruction nor the court's charge contained all of the six essential elements of fraud.

The Bank relies on *Oilwell Div., United States Steel Corp. v. Fryer*, 493 S.W.2d 487, 491 (Tex.1973) for the six elements of fraud. In *Fryer* the court quoted from *Wilson v. Jones*, 45 S.W.2d 572, 573 (Tex. Comm'n, App.1932, holding approved) as follows:

> The authorities announce the general rule that to constitute *actionable fraud* it must appear: (1) That a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury.... Each of these elements must be established, ... and the absence of any one of them will *prevent a recovery*.

(emphasis added). In both *Wilson* and *Fryer*, the courts were not attempting to make a limited (*i.e.*, straight-jacket) definition of fraud for use in all fraud situations. There the courts were dealing with only one form of fraud.

Fraud consists of many forms and species. It has been stated that the term "fraud" is not exactly definable, *Hayter v. Hudgens*, 236 S.W. 232, 233 (Tex.Civ. App.—Texarkana 1921, no writ), fraud is an elusive term, *Kinard v. Sims*, 53 S.W.2d 803, 805 (Tex.Civ.App.—Amarillo 1932, writ ref'd), and that fraud is so multiform as to admit to no rules or definitions. *Klindworth v. O'Connor*, 240 S.W.2d 470, 477 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.). *See also Parker v. Solis*, 277 S.W. 714, 717 (Tex.Civ.App.—San Antonio 1925, writ dism'd) (stating that fraud in most cases is difficult to define). Nevertheless, courts have attempted to define fraud. In that regard, fraud has been defined as any cunning or artifice used to cheat or deceive another and it is synonymous with bad faith, overreaching, and dishonesty. *Kinard v. Sims*, 53 S.W.2d at 805.

It is the generally accepted rule that there can be no all-embracing definition of fraud, but that each case must be considered upon its own peculiar facts. 37 Am. Jur.2d Fraud and Deceit § 1 (1968). Fraud assumes so many different degrees and forms that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat. In fact, the fertility of man's invention in devising new schemes of fraud is so great that courts have generally declined to define it, reserving to themselves the liberty to deal with fraud in whatever form it may present itself. *Id.* In that regard it is said that it is better not to define the term lest the craft of men should find ways of committing fraud which might evade such a definition. *Id.*

The authorities point out that even though it is often said that fraud cannot or should not be precisely defined, the books contain many definitions such as:

> ... unfair dealing, malfeasance, as positive act resulting from a wilful intent to deceive, an artifice by which a person is deceived to his hurt, a wilful, malevolent act, directed to perpetrating a wrong to the rights of others; anything which is calculated to deceive, whether it is a single act or a combination of circumstances, or acts or words which amount to a suppression of the truth, or mere silence, deceitful practices in depriving or endeavoring to deprive another of his known right by means of some artful device or plan contrary to the plain rules of common honesty; the unlawful appropriation of another's property by design, and making one state of things appear to a person with whom dealings are had to be the true state of things, while acting on the knowledge of a different state of things. Fraud has also been said to consist of conduct that operates prejudicially on the rights of others and is so intended, a deceitful design to deprive another of some profit or advantage; or deception practiced to induce another to part with property or to surrender some legal right, which accomplishes the end desired.

*Id.* In general, fraud embraces all multifarious means resorted to by one individual to get advantages over another by false suggestions or suppression of truth, including all surprise, tricks, cunning, dissembling and unfair way by which another is cheated. *Id.* at § 1 n. 1.

In *Yamini v. Gentle,* 488 S.W.2d 839, 843 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.) the court stated:

Appellee correctly states that the courts of our state have declared that the word *"fraud" is not exactly definable* but is an elusive term. It is said *that fraud is so multiform as* to admit to no rules or definitions and *that equity leaves the way open to punish frauds and to redress wrongs perpetrated by means of fraud in whatever form it may appear.*

(emphasis added).

Moreover, in *Garcia v. Rutledge,* 649 S.W.2d 307, 312 (Tex.App.—Amarillo 1982, no writ), we stated that fraud is an elusive and shadowy term which has been defined in some cases as any cunning or artifice used to cheat or deceive another and that fraud is synonymous with bad faith-overreaching and dishonesty. To the same effect is *Kinard v. Sims,* 53 S.W.2d at 805.

Consequently, under the circumstances of this case, we conclude that the trial court did not err by instructing the jury that "fraud is the successful employment of cunning, deception, or artifice to circumvent, cheat, or defraud another to her injury." As stated above, the authorities of this State are contrary to the Bank's position. In that regard, we overrule the Bank's contention that Ms. Fatheree's failure to obtain findings on its alleged elements of actionable fraud is fatal to her fraud in the inducement defense.

■ Under this point of error, the Bank further contends that Ms. Fatheree cannot impose fraud in the inducement against the Bank because she did not deal with the Bank and the Bank made no representations or inducements to her regarding the notes in question. We disagree.

It is settled that "the partaking of benefits of a fraudulent transaction makes the participants principals and liable as such." *Corpus Christi Teachers C.U. v. Hernandez,* 814 S.W.2d 195, 202 (Tex.App.—San Antonio 1991, no writ); *Five Star Transfer & Terminal Ware. Corp. v. Flusche,* 339 S.W.2d 384, 387 (Tex.Civ.App.—Texarkana 1960, writ ref'd n.r.e.). Moreover, this Court has held that "each party to a fraudulent transaction is responsible for the acts of the others done in furtherance of the fraudulent scheme ... and all who participate are liable for the fraud." *Crisp v. Southwest Bancshares Leasing Co.,* 586 S.W.2d 610, 615 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

In the instant case, the Bank's involvement in this fraudulent scheme is clear. As we discussed earlier, Mr. Fatheree gave Mr. Faulkner the notes signed by Ms. Fatheree. The Bank then completed the blank portions of the notes and deposited the note proceeds into Ms. Fatheree's account at the Bank. Next, Mr. Fatheree withdrew $249,012.67 of these funds from his daughter's account and used them to fulfill his personal indebtedness to the Bank. Under these circumstances, the Bank benefitted from the fraud. Consequently, we overrule point of error three.

■ By its seventh point of error, the Bank contends the trial court erred in entering judgment for Ms. Fatheree because the evidence was factually insufficient to support her affirmative defenses and the case should be retried in the interest of justice.[3] We disagree.

In reviewing factual sufficiency challenges, this Court considers and weighs all of the evidence, setting aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

In the present case, the jury found that Ms. Fatheree "was induced by fraud into

---

3. We will confine our factual sufficiency review to the affirmative defense of fraud in the inducement.

signing the promissory notes at issue in this case." Specifically, the record revealed that:

(1) Mr. Fatheree borrowed money in his daughter's name, yet, he personally received all of the funds;

(2) Mr. Fatheree discussed this scheme with Mr. Faulkner, who clearly understood the plan;

(3) Mr. Fatheree accomplished his scheme by asking his daughter to come by his office and "sign some papers." Unbeknownst to Ms. Fatheree, the papers she signed were, in fact, promissory notes;

(4) Ms. Fatheree did not authorize her father to borrow funds in her name or fill in the blanks of a promissory note to the Bank. Mr. Fatheree returned the blank notes to Mr. Faulkner. Moreover, the jury found, in response to special issue number nine, that the promissory notes were completed by an employee of the Bank; and

(5) Mr. Fatheree testified that he intended to deceive his daughter.

After reviewing the record, we are persuaded that the jury finding on the affirmative defense of fraud in the inducement was not clearly wrong or unjust. Consequently, we overrule point of error seven as to Ms. Fatheree's fraud in the inducement defense.

■ By its last point of error, the Bank contends the trial court erred in granting Ms. Fatheree the right to open and close summations to the jury. Again, we disagree.

The Bank had the burden of proving its action on the notes. After the close of evidence, Ms. Fatheree stipulated to liability on the notes subject to favorable findings on her four defenses. No issue on Ms. Fatheree's liability to the Bank was submitted to the jury. However, issues regarding her defenses, on which she had the burden, were submitted. The charge also contained the Bank's contingent defenses to Ms. Fatheree's defenses, on which the Bank had the burden of proof. Ms. Fatheree was allowed to open and close arguments.

Rule 279 provides that the "party having the burden of proof ... on all matters which are submitted by the charge, shall be entitled to open and conclude the argument...." Here, Ms. Fatheree had the burden of proof on "all" the remaining issues submitted by the charge and, thus, the right to open and close arguments to the jury. This is so because the Bank's defensive issues were contingent, only becoming relevant if the jury found for Ms. Fatheree on her issues. *Dreeben v. Sidor*, 254 S.W.2d 908, 911–12 (Tex.Civ.App.— Amarillo 1952, writ ref'd n.r.e.). This does not render the word "all" in Rule 279 meaningless, as the Bank claims. A party could establish his cause of action as a matter of law and still have the burden on attorney's fees or other ancillary matters. *See Horton v. Dental Capital Leasing Corp.*, 649 S.W.2d 655, 656–57 (Tex.App.— Texarkana 1983, no writ). Consequently, we overrule point of error eight.

In summary, we overrule the Bank's third, sixth, seventh as to fraud in the inducement, and eighth points of error. Therefore, addressing the remaining points of error is unnecessary to the disposition of the case. Tex.R.App.P. 90(a). Accordingly, the judgment is affirmed.