TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00247-CV






Jackie Eugene Hinson, Appellant



v.



Cynthia Ann Hinson, Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 207TH JUDICIAL DISTRICT


NO. C93-202B, HONORABLE JACK ROBISON, JUDGE PRESIDING







 Cynthia Ann Hinson sued Jackie Eugene Hinson, her former husband, in a post-divorce
action to enforce a property division made in their divorce decree. See Tex. Fam. Code Ann. § 3.71
(West 1993). (1) The trial court rendered judgment in favor of Ms. Hinson. We will modify the judgment
and affirm it as modified.


THE CONTROVERSY


 Jackie Eugene Hinson and Cynthia Ann Hinson were divorced in 1994. At the time of the
divorce, they owned and operated San Jet, Inc., a corporation. The object of the parties' present dispute
is a "key-man" life insurance policy purchased by San Jet to insure the corporation against losses resulting
from Mr. Hinson's death. Ms. Hinson alleged he misrepresented the value of the policy during the divorce,
resulting in an improper award or division of the policy. She advanced two theories of recovery. She
alleged first that Mr. Hinson failed to disclose the policy during the divorce suit, entitling her to the entire
value of the policy under an "undisclosed property" provision in the divorce decree. The provision states:


[A]ny undisclosed property not provided for [in the divorce decree] or not provided for
in the [attached] agreement is awarded to the party not in possession and control.



In the alternative, Ms. Hinson alleged that Mr. Hinson acquired the policy by a fraud practiced on her in
the divorce suit. 

 Mr. Hinson was in prison during the pendency of the divorce suit and the events that
transpired thereafter. His daughter Dara acted on his behalf through a general power of attorney; she also
served as corporate secretary and treasurer of San Jet. While Mr. Hinson was in prison, Paul Tillman, a
court-appointed receiver, managed San Jet.

 In January 1994, during the pendency of the divorce proceeding, Mr. Hinson was required
to file a sworn inventory of his separate and community properties. He listed the following as an asset:


Contingent Owner Rights in the Sanjet, Inc. owned policy with Midland National Life
Insurance Company # 01449703 on the life of Jackie E. Hinson in the face value of one
million dollars. No cash value.



The inventory did not describe what the "contingent rights" were.

 The divorce decree awarded each of the parties a fifty-percent interest in San Jet and its
corporate stock. The decree also incorporated a settlement agreement by which the parties agreed to
appraise and sell the company and divide the proceeds equally.

 Under a separate subsection that allocated various insurance policies between the parties,
the decree awarded Mr. Hinson his "contingent owner rights" in the Midland Life policy, which were of
"[n]o cash value."

 In October 1994, about twenty days after he approved the divorce decree, Mr. Hinson
had Dara change the Midland Life policy to reflect that Mr. Hinson, rather than San Jet, was the owner and
beneficiary of the policy. The change was made without Ms. Hinson's knowledge or consent. After the
change, Mr. Hinson paid the premiums on the policy. (2)

 The Hinsons sold San Jet in December 1994. Each received half the proceeds of the sale,
as required by the divorce decree.

 Ms. Hinson realized eventually that the Midland Life whole-life policy, having a cash-surrender value, was a valuable item of property, not a valueless term-life policy She also realized that the
policy had belonged to San Jet before the divorce, not Mr. Hinson. She sued Mr. Hinson in an action to
recover her interest in the policy. The trial court rendered judgment in favor of Ms. Hinson for $42,000,
the stipulated value of the Midland Life policy, and awarded her attorney's fees. Mr. Hinson appeals the
judgment in thirty-two points of error challenging the sufficiency of the evidence to support the trial-court
findings. (3)


DISCUSSION AND HOLDINGS


 One theory urged by Ms. Hinson in her suit to recover the Midland Life policy was that
the policy was an "undisclosed asset." The trial court agreed with Ms. Hinson's theory; although Mr.
Hinson disclosed the existence of the policy in his inventory of assets, he failed accurately to disclose the
value of the policy, which was $42,000. Enforcing the undisclosed-property provision in the decree, the
court awarded Ms. Hinson the policy in its entirety. Mr. Hinson challenges the legal and factual sufficiency
of the evidence to support a finding that the undisclosed-property provision applied to the Midland Life
policy. (4)

 We agree with Mr. Hinson that the undisclosed-property provision does not apply to the
Midland Life policy. Unless the corporation is a spouse's alter ego, a court may only award a spouse's
interest in the corporation, not specific corporate property. (5) See Vallone v. Vallone, 644 S.W.2d 455,
458 (Tex. 1982); Siefkas v. Siefkas, 902 S.W.2d 72, 79 (Tex. App.--El Paso 1995, no writ); Thomas
v. Thomas, 738 S.W.2d 342, 343 (Tex. App.--Houston [1st Dist.] 1987, writ denied); see also
McKnight v. McKnight, 543 S.W.2d 863, 867 (Tex.1976) (holding court powerless to divide partnership
assets; court can divide only spouse's partnership interest).

 Ms. Hinson did not raise the "alter ego" theory, nor does the record support such a theory. 
The record does not show how San Jet was operated, other than the fact that at the time of the divorce the
company was operated by a court-appointed receiver. Moreover, Mr. Hinson was in prison at all material
times. In sum, there is no evidence that San Jet was anything but an independent legal entity; and the
evidence is undisputed that the Midland Life policy was wholly owned by San Jet when Mr. Hinson signed
the inventory. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 229 (Tex. 1990).

 The undisclosed-property provision could apply only to property the parties were required
to disclose--that is, separate and community assets subject to division upon divorce. Because the Midland
Life policy was owned by San Jet, it was not subject to division under the decree of divorce. Mr. Hinson
had no obligation to reveal either the existence or the value of the property. We conclude that because Mr.
Hinson did not own the Midland Life policy, the trial court erred in finding the policy was subject to the
undisclosed-property provision in the divorce decree.

 The trial court also found that Mr. Hinson defrauded Ms. Hinson respecting the policy. 
Mr. Hinson challenges the legal and factual sufficiency of the trial-court findings relating to fraud.

 The elements of actionable fraud are commonly said to be: (1) a material
misrepresentation, (2) which was false, and (3) which was either known to be false when made or was
asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied
upon, and (6) which caused injury. See DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex.
1990). Mr. Hinson challenges the trial-court findings that he knowingly or recklessly made
misrepresentations with regard to the San Jet policy with the intention that Ms. Hinson rely on them. He
also challenges the trial-court findings that Ms. Hinson did in fact rely on those representations to her
detriment. (6) We believe the evidence supports all six elements of fraud. (7)

 The divorce decree was signed in September 1994, awarding Mr. Hinson the "contingent
rights" in the Midland Life policy designated in his inventory. Twenty days thereafter, Mr. Hinson changed
the Midland Life policy to reflect that he had succeeded San Jet as the owner and beneficiary. In
December 1994, the Hinsons sold San Jet to Mr. Tillman. Mr. and Ms. Hinson each received half the
proceeds of the sale.

 We believe first that the trial court reasonably could have found that Mr. Hinson knowingly
made misrepresentations regarding the policy or made them without knowledge of their truth. During the
divorce, he specifically listed a "contingent interest" in the Midland Life policy as one of his personal assets,
indicating he had a legal right in the policy. He made this declaration although he, as a corporate executive,
had purchased the policy for San Jet and personally designated therein that San Jet was the owner and
beneficiary. Second, Mr. Hinson falsely indicated that the policy had "no cash value."

 Mr. Hinson argues there was no evidence that he had knowledge of the value of the policy,
therefore he did not "knowingly" misrepresent the policy in that regard. We believe, however, that Mr.
Hinson's affirmative and misleading statements regarding the policy, a policy he personally purchased for
San Jet, constitute sufficient evidence of a statement made at minimum without knowledge of its truth. 
Moreover, the fact that he caused the policy to be converted to his name as owner, within twenty days of
the divorce, constitutes circumstantial evidence that he knew the policy had some value. (8) See Truboff v.
Gross, 833 S.W.2d 235, 237-38 (Tex. App.--Houston [14th Dist.] 1992, writ denied) (intent to defraud
may be inferred from party's subsequent acts after representation is made); see also Spoljaric v. Percival
Tours, Inc., 708 S.W.2d 432, 435 (Tex. 1986) (intent to defraud invariably must be proven by
circumstantial evidence). On the basis of the misleading statements in his inventory, Mr. Hinson procured
a property division awarding him the "contingent rights" in the policy. While meaningless as a property
division, the award in the decree served to effect the fraud.

 Ms. Hinson testified she believed the policy had no value, and that she relied on this belief
when San Jet was being sold to Mr. Tillman. Had the policy been listed as an asset of San Jet, she testified,
it would have affected her negotiations. Her reliance allowed Mr. Hinson to extract the policy from San
Jet without opposition. Furthermore, Dara Hinson testified she willingly changed the ownership of the
Midland Life policy at her father's request because she believed, on the basis of the divorce decree
awarding him the "contingent rights," that he was entitled to the policy. She testified she did not inform Ms.
Hinson of the transaction, although she knew Ms. Hinson had a fifty-percent interest in San Jet's assets,
because of this belief. We believe this uncontroverted evidence is sufficient to support the trial-court finding
of reliance.

 We also reject Mr. Hinson's argument that Ms. Hinson was not harmed by his actions. 
He argues that the Midland Life policy was sold to Mr. Tillman as part of San Jet. Because Ms. Hinson
received half the proceeds of that sale, he argues, she was not harmed. We believe the evidence shows
the Midland Life policy was not sold to Mr. Tillman. The uncontroverted evidence shows that at the time
of the sale, Mr. Hinson retained the policy; he owns the policy today. Moreover, there is conflicting
testimony regarding whether Mr. Tillman believed he purchased the policy. The policy was not listed as
a company asset on the inventory lists provided Mr. Tillman during sales negotiations. The policy appeared
on an inventory list after the parties had closed on the deal. It is clear, however, that the sales price was
not increased when the $42,000 policy was added to the inventory of property sold to Mr. Tillman. On
the basis of these facts, we conclude the trial court could reasonably have concluded that Mr. Hinson took
the policy from San Jet without accounting to Ms. Hinson for the value of her interest in the policy as a San
Jet asset.

 Mr. Hinson challenges the trial court's power to make findings regarding fraud. Mr. Hinson
argues that because this suit was solely one to enforce a divorce decree, the trial court exceeded its powers
by making findings of fraud. (9) A suit to enforce a divorce decree may not amend, modify, alter, or change
the division of property made or approved in the decree of divorce or annulment. See Tex. Fam. Code
Ann. § 3.71(a) (West 1993). Any order that amends, modifies, alters, or changes the actual, substantive
division of property made or approved in a final decree of divorce is beyond the power of the divorce court
to render and is unenforceable. See id. § 3.71(b) (West 1993).

 Assuming this point of error was preserved, we find it to be without merit. The trial court
did no more than impose on the parties the obligations of the decree. Under the decree, Ms. Hinson was
entitled to half the assets of San Jet, including the Midland Life policy. The trial-court order awarding her
damages on that basis did not purport to make any substantive changes in the parties' obligations under
the decree; therefore, the court acted fully within its powers to enforce its previous judgment.

 Finally, Mr. Hinson challenges the amount of damages awarded by the court. (10) Because
the policy was not undisclosed property owned by Mr. Hinson, we hold the trial court erred in awarding
Ms. Hinson the entire value of the policy ($42,000) under the undisclosed-property provision. Because
the divorce decree awarded Ms. Hinson one-half of San Jet's assets, and because the policy was taken
from San Jet by Mr. Hinson, we hold that Ms. Hinson was entitled to half of the value of the policy.

 We therefore modify the judgment to award Ms. Hinson half the value of the asset, or
$21,000, and affirm the trial-court award of attorney's fees. We affirm the judgment as modified.



 

 John Powers, Justice

Before Justices Powers, Kidd and B. A. Smith

Modified and, as Modified, Affirmed

Filed: July 30, 1998

Do Not Publish

1. Ms. Hinson brought this suit pursuant to section 3.71 of the Texas Family Code (West 1993), which
allows a party to bring an action to enforce a division of property made in a decree of divorce.
2. Actually, Mr. Hinson seems to have paid one premium on the policy, then converted the policy from
a $1,000,000 policy to a $250,000 policy. By lowering the amount of coverage, he was freed from paying
further premiums on the policy.
3. The court's finding of facts can be summarized as follows: (1) As part of the property settlement,
the court ordered that the life insurance and the accompanying cash value, if any, was awarded to the party
who is the named insured; (2) listed under the award of property to Jackie Eugene Hinson was "contingent
owner rights in the Midland Life policy with a face value of one million dollars. No cash value."; (3) Mr.
Hinson swore in his inventory that the Midland Life policy had no cash value; (4) the policy was awarded
to Mr. Hinson on the basis that it had no cash value; (5) the parties stipulate that the value of the policy at
the time of divorce was approximately $42,000; (6) the divorce decree contained a clause which awarded
"any undisclosed property" to the "party not in possession or control"; (7) Ms. Hinson's damages pursuant
to her enforcement action are $42,000; (8) Mr. Hinson or his agents had knowledge of the fact that the
Midland Life policy had cash value at the time he filed his sworn inventory or at the time of the finalization
of the divorce decree; (9) Mr. Hinson or his agents knew his representations concerning the Midland Life
policy were false or made them without knowledge of their truth as a positive assertion; (10) Mr. Hinson
made false representations regarding the Midland Life policy with the intention that Ms. Hinson would act
or rely on them; (11) Ms. Hinson was not aware that the Midland Life policy had cash value at any time
until after the divorce was final; (12) Ms. Hinson acted and relied upon the representations of Mr. Hinson
or his agents that the Midland Life policy had no cash value; (13) as a consequence of such reliance, Ms.
Hinson suffered injury and damage in that neither she nor the court considered the cash value of the
Midland Life policy in the division of the estate; (14) Mr. Hinson or his agents had knowledge and control
of the information concerning the Midland Life policy during the pendency of the divorce; (15) Ms. Hinson
had no knowledge or control of the Midland Life policy during the pendency of the divorce.


 The court also made the following conclusions of law: (1) Mr. Hinson has committed fraud against
Ms. Hinson; (2) the divorce decree provided that any undisclosed property not provided for in the divorce
decree is awarded to the party not in possession and control; because Mr. Hinson did not disclose the cash
value of the Midland Life policy and was in control of the policy, the policy should be awarded to Ms.
Hinson; (3) because the terms of the Midland Life policy have changed since the divorce, Ms. Hinson
should be awarded $42,000, the stipulated value of the policy at the time of divorce; (4) Ms. Hinson's
damages in the enforcement action are $42,000; (5) Ms. Hinson is entitled to attorney's fees [amounts
specified].
4. Mr. Hinson argues as follows in points of error 1, 2, 3, 4, 5, 6, 11, 12, 23, 24, 25, and 26 that (1)
he and his wife had equal possession and control over the policy (2) because he disclosed the existence
of the policy, the policy was not "undisclosed"; (3) the divorce decree did not award him the policy; and
(4) the policy should not be awarded to Ms. Hinson.


 In deciding a no-evidence point, we consider only the evidence and inferences tending to support the
finding of the trier of fact and disregard all evidence and inferences to the contrary. We will uphold the
finding if more than a scintilla of evidence supports it. See Burroughs Wellcome Co. v. Crye, 907 S.W.2d
497, 499 (Tex. 1995). In deciding a factual-sufficiency point we consider and weigh all the evidence and
should set aside the judgment and order a new trial only if the judgment is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).
5. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 229 (Tex. 1990) (when corporate entity is
owned or controlled by individual who operates company in manner indistinguishable from his personal
affairs and in manner calculated to mislead those dealing with him to their detriment, the corporate fiction
may be disregarded).
6. These challenges were made in points of error 7-10, and 13-22.
7. We will address the issue of fraud according to the common definition given by Mr. Hinson. We
recognize, however, the generally accepted rule that there can be no all-embracing definition of fraud, and
that each case must be considered upon its own peculiar facts. 37 Am. Jur. 2d Fraud and Deceit § 1
(1968). It is said that fraud is so multiform as to admit to no rules or definitions and that equity leaves the
way open to punish frauds and to redress wrongs perpetrated by means of fraud in whatever form it may
appear. See First State Bank of Miami v. Fatheree, 847 S.W.2d 391, 396 (Tex. App.--Amarillo 1993,
writ denied); see also Yamini v. Gentle, 488 S.W.2d 839, 843 (Tex. Civ. App.--Dallas 1972, writ ref'd
n.r.e.).
8. Mr. Hinson took inconsistent positions, regarding the policy, to shield his actions: when he sold San
Jet to Mr. Tillman, he took the position that the policy had been awarded to him in the divorce decree;
when he was sued by Ms. Hinson, he took the position that the policy had been sold to Mr. Tillman. This
is circumstantial evidence that he knew the policy was worth protecting.
9. These are points of error 27 and 28.
10. These are points of error 29, 30, 31, and 32.


act that the
Midland Life policy had cash value at the time he filed his sworn inventory or at the time of the finalization
of the divorce decree; (9) Mr. Hinson or his agents knew his representations concerning the Midland Life
policy were false or made them without knowledge of their truth as a positive assertion; (10) Mr. Hinson
made false representations regarding the Midland Life policy with the intention that Ms. Hinson would act
or rely on them; (11) Ms. Hinson was not aware that the Midland Life policy had cash value at any time
until after the divorce was final; (12) Ms. Hinson acted and relied upon the representations of Mr. Hinson
or his agents that the Midland Life policy had no cash value; (13) as a consequence of such reliance, Ms.
Hinson suffered injury and damage in that neither she nor the court considered the cash value of the
Midland Life policy in the division of the estate; (14) Mr. Hinson or his agents had knowledge and control
of the information concerning the Midland Life policy during the penden