NUMBER
13-04-367-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

ELVIA MARTINEZ DE
VILLAGOMEZ AND 

CLAUDIA GONZALEZ,                                                                    Appellants,

                                                             v.

FIRST NATIONAL BANK- EDINBURG, ET
AL.,                             Appellees.

 

 

                     On appeal from the 93rd
District Court

                                        of
Hidalgo County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Hinojosa and Yanez

 

      Opinion by Chief
Justice Valdez

 

Appellants, Elvia Martinez de Villagomez and Claudia
E. Gonzalez (collectively AVillagomez@), appeal from the trial court=s decision to grant summary judgment in favor of
appellees, First National BankBEdinburg, Aurelio Garza and Liana Rodriguez.  Because we find no evidence of fraud or
trickery on the part of appellees, we affirm.








I. Background

Villagomez is a Mexican businesswoman who neither
reads nor speaks English.  She had been
regularly traveling from Mexico to conduct her banking and investing at several
different U.S. financial institutions following the devaluation of the Mexican
peso.  In 1996, Villagomez invested in a
certificate of deposit (ACD@) with First National BankBEdinburg (AFNB@) upon the recommendation of Roberto Zuniga, a
family friend.  While purchasing the CD
from FNB, Villagomez also signed bank loan documents which pledged her CD as
collateral for a loan obtained from FNB by Zuniga.  Villagomez was assisted at the bank by two
Spanish-speaking FNB employees, appellees Garza and Rodriguez, and was
accompanied by Zuniga.  

In 1997, Zuniga failed to repay his loan and FNB
appropriated the funds from Villagomez=s CD. 
Villagomez and her daughter then sued FNB and its employees, alleging
that they committed fraud when they allowed Villagomez to sign the documents
pledging her CD as collateral for Zuniga=s loan. 
Villagomez claimed that she had not known what the documents said, as
they were in English, which she does not read, and she was unaware that her CD
was being used as collateral for Zuniga=s loan because Zuniga=s name
had not been on the documents she signed.  









Appellees moved for summary judgment, arguing that
there was no proof of fraud or any other misconduct on their part.  With their motion, appellees submitted
several loan documents signed by Villagomez clearly indicating that she was pledging
her CD as collateral for a loan to ARoberto Zuniga d/b/a Zuniga=s Auto Sales,@ including a special Anotice
to cosigner@ signed by Villagomez and ostensibly alerting her to
the fact that she has guaranteed the debt of AZuniga
d/b/a Zuniga=s.@  All these
documents were filled out by Villagomez in the presence and with the assistance
of Spanish-speaking FNB employees.  The
trial court granted appellees= motion and entered judgment against
Villagomez.  Now on appeal, Villagomez
alleges that the trial court erred in granting summary judgment in favor of
appellees because FNB was either fraudulent or negligent when it allowed Villagomez
to pledge her CD as collateral. 

II.  Analysis

The movant in a traditional motion for summary
judgment has the burden of showing that there is no genuine issue of material
fact, and that it is entitled to judgment as a matter of law.  See Nixon v. Mr. Property Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985).  In deciding
whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true. See id. at
548‑49.








A person who signs a contract is presumed as a
matter of law to know its terms.  D.
Wilson Constr. Co. v. McAllen Indep. Sch. Dist., 848 S.W.2d 226, 230 (Tex.
App.BCorpus Christi 1992, writ dism'd w.o.j.); see
also Thigpen v. Locke, 363 S.W.2d 247, 251 (Tex. 1962) (charging parties
to an arm's‑length transaction with a duty to read what they sign).  The failure by a party to read a document,
without a showing of fraud, is generally not a defense to its enforcement.  Estes v. Republic Nat'l Bank, 462
S.W.2d 273, 276 (Tex. 1970); Peters v. Gifford‑Hill & Co., 794
S.W.2d 856, 861 (Tex. App.BDallas 1990, writ denied).  In the absence of fraud, a party's failure to
read an instrument before signing it is not a ground for avoiding it.  Estes, 462 S.W.2d at 276; Peters,
794 S.W.2d at 861. This is true even in the case of illiteracy or an inability
to read English.  See Vera v. N. Star
Dodge Sales, Inc., 989 S.W.2d 13, 17-18 (Tex. App.BSan Antonio 1998, no pet.); see also de Tamez v.
Southwestern Motor Transp., Inc., 155 S.W.3d 564, 570 (Tex. App.BSan Antonio 2004, no pet.) (A[E]ven though English was not his first language, we
must presume, as a matter of law, that [appellant] read and understood the
contract, unless he was prevented from doing so by trick or artifice.@).

Villagomez admits that she failed to read the
documents before signing them.  However,
she attempts to invoke the fraud exception to the general rule by arguing that
FNB made material representations to her which wrongfully and falsely led her
to believe that she was simply investing her money with FNB, not that she was
pledging the money as collateral.  Fraud
is found when there has been (1) a material misrepresentation (2) which was
false, (3) which was known to be false when made or was made recklessly as a
positive assertion without knowledge of its truth, (4) which was intended to be
acted upon, (5) which was relied upon, and (6) which caused injury.  Ins. Co. of N. Am. v. Morris, 981
S.W.2d 667, 674 (Tex. 1998). 








 We have
reviewed the relevant evidence submitted, including Villagomez=s deposition testimony, and conclude that she has
failed to show that any material misrepresentation was made to her by
appellees. In her deposition, which was submitted as summary judgment evidence,
Villagomez testified that FNB employees gave her the forms to fill out and
provided her with assistance.  She did
not report having any problems communicating with or understanding the FNB
employees, who were both bilingual.  Villagomez
stated that she did not ask what the documents were or request a translation of
their contents.  Furthermore, she said
that she had not seen Zuniga=s name on any of the documents she signed; however,
she also admitted to signing the documents without reading them.  Villagomez failed to report any fraudulent or
misleading material misrepresentation made to her by FNB or its employees, nor
did she provide any evidence that would tend to show trickery or deception.

Villagomez also alleges in her petition that
appellees made a Apartial disclosure.@  Courts will impose a duty to disclose
information in arm's‑length business transactions if a party makes a
partial disclosure that, although true, conveys a false impression. Anderson,
Greenwood & Co. v. Martin, 44 S.W.3d 200, 213 (Tex. App.BHouston [14th Dist.] 2001, pet. denied).  Villagomez alleges that this partial
disclosure occurred when an FNB employee asked her in Spanish what term of
years she would like for her CD.  We
conclude, however, that this was merely a question, not a material
representation, unrelated to Zuniga=s loan, and we decline to characterize this question
as a partial disclosure conveying the false impression that the CD would not be
used as collateral for a loan.  See
Fleming v. Tex. Coastal Bank of Pasadena, 67 S.W.3d 459, 462 (Tex. App.BHouston [14th Dist.] 2002, pet. denied).  








Finally, Villagomez alleges that FNB had a duty to
warn her about or otherwise disclose the nature of the documents she was
signing and was therefore negligent in fulfilling this duty.  Non-disclosure is neither fraudulent nor
negligent unless there is a duty to disclose. 
See Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001).  Fiduciary duties arise as a matter of law in
certain formal relationships, including attorney‑client, partnership, and
trustee relationships.  Ins. Co. of N.
Am., 981 S.W.2d at 674; see Schlumberger Tech. Corp. v. Swanson, 959
S.W.2d 171, 177 (Tex. 1997) ("Mere subjective trust does not, as a matter
of law, transform arm's length dealing into a fiduciary
relationship.").  The relationship
between a bank and its customer is generally not a fiduciary one.  See Fleming, 67 S.W.3d at 462;  Bank One, Texas, N.A. v. Stewart, 967
S.W.2d 419, 442 (Tex. App.BHouston [14th Dist.] 1998, pet. denied).  Inability to read English has not been found
sufficient to transform the normally arm=s length relationship between a bank and its client
into a fiduciary relationship; this Court has held that Athe fact that appellants may not be fluent in
English did not of itself create such a confidential relationship as to relieve
them from their duty to read the contract documents.@  Salinas
v. Beaudrie, 960 S.W.2d 314, 320 (Tex. App.BCorpus
Christi 1997, no writ).  We find no Texas
case law supporting the enforcement of a fiduciary relationship between a bank
and its client based solely on the fact that the client did not speak English
and therefore could not read the English documents being signed.  It would seem especially drastic for this
Court to impose for the first time such a fiduciary duty here, given that
Spanish-speaking employees were on hand to assist Villagomez and answer any
questions, and that Villagomez had previous experience with U.S. banking
institutions.    








Villagomez does point to First State Bank of
Miami v. Fatheree, 847 S.W.2d 391, 396 (Tex. App.BAmarillo 1993, writ denied) and Corpus Christi
Teachers Credit Union v. Hernandez, 814 S.W.2d 195, 202 (Tex. App.BSan Antonio 1991, no writ) to support her argument
that financial institutions have been liable under fact situations
substantially similar to those present in this case.  In Fatheree, however, it was found
that the bank involved was an active and knowing partner of the principal
wrongdoer in a scheme to defraud, see Fatheree, 847 S.W.2d at 396-97,
and in Hernandez, the bank was involved in or aware of a plan to
fraudulently alter loan agreements.  See
Hernandez, 814 S.W.2d at 199-200.  In
both these situations, a scheme to defraud was conceived and a representative
from the bank willingly abused the bank=s services in order to further the scheme.  Here, there was no evidence of any
pre-conceived plan to defraud Villagomez; instead the evidence shows that FNB
fully performed its required duties under the law and did not cheat, lie, make
any misrepresentations to Villagomez regarding her loan or otherwise abuse or
misuse bank services.

III. Conclusion

   We conclude
that the trial court did not err in granting appellees= motion for summary judgment. We overrule Villagomez=s lone issue on appeal and affirm the judgment of
the trial court.              

 

                                           

Rogelio Valdez,

Chief Justice

 

 

 

Memorandum Opinion delivered and filed

this 4th day of August, 2005.