Roy G. SHANNON, Appellant,

v.

Byron LAW–YONE, M.D. and Sanford Kiser, M.D., Appellees.

No. 2–96–096–CV.

Court of Appeals of Texas, Fort Worth.

July 24, 1997.

Rehearing Overruled Sept. 4, 1997.

Harold D. Hammett, Fort Worth, Appellant.

J.M. Lee, Fort Worth, for Appellees.

Before LIVINGSTON, DAUPHINOT and HOLMAN, JJ.

## OPINION

DAUPHINOT, Justice.

Appellant Roy G. Shannon initially sued Appellees and several psychiatric hospitals on various claims, including fraud, false imprisonment, invasion of privacy, libel and slander, negligence, and conspiracy. After Shannon settled with some of the defendants, the trial court granted summary judgment in favor of the remaining defendants, Appellees Byron Law–Yone, M.D., and Sanford Kiser, M.D., ruling that all of the claims in Shannon's suit were barred by the two-year statute of limitations.[1] Shannon appeals, complaining in one point of error that the trial court erred by applying the incorrect statute of limitations to his fraud claim because the four-year, rather than two-year, statute of limitations applies to the fraud cause of action.[2] Because we find that the trial court incorrectly applied the two-year statute of limitations and erred in granting summary judgment, we reverse and remand the case for trial.

## BACKGROUND

On February 22, 1989, Brookhaven Psychiatric Pavilion admitted Shannon as a voluntary inpatient for treatment relating to pain management and his addiction to pain-relieving medications. Shannon expressed a desire to end treatment and leave the facility several times during his stay by submitting letters requesting discharge within 96 hours ("96–hour" letters). After the first 96–hour letter, Dr. Law–Yone met with Shannon, his wife, and Sharon Young, a social worker and former defendant. Shannon then retracted the letter. He later submitted another 96–hour letter but retracted it the following morning. Shannon was discharged from the facility on or about April 7, 1989. This lawsuit was filed on February 19, 1993, more than two years but less than four years after the alleged cause of action accrued.[3]

Shannon alleged fraud and other causes of action in his original and first amended original petitions. In a second amended petition, Shannon continued his initial claim that Appellees had defrauded and deceived him into rescinding his 96–hour letters and remaining hospitalized. He timely filed his second amended original petition about three weeks

---

1. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon 1986 & Supp.1997).

2. *See id.* § 16.004.

3. *See Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438, 440–41 (1940) (stating that a fraud cause of action accrues when the defendant makes false representations or omissions).

before the summary judgment hearing but after Appellees had filed their motion for summary judgment.[4]

Limiting his suit to fraud and omitting all other causes previously pled, Shannon alleged more specific instances of fraudulent conduct by the two doctors, in response to their special exceptions to his original claims. The fraudulent acts Appellees allegedly committed to convince Shannon to lengthen his stay included creating false records and misrepresenting that his insurance would not cover his medical bills if he were to be discharged pursuant to a 96–hour letter and against medical advice. Appellees countered that Shannon expressed a desire to stay in Brookhaven and that his wife was adamant that he should stay there until he was free of his drug dependency problems. They also noted that Shannon's personal physician monitored his hospitalization.

The trial court granted summary judgment in favor of Appellees based on their two-year statute of limitations affirmative defense. The court concluded in its order that "this is a suit for personal injury damages sounding in tort. . . ."

### ISSUES ON APPEAL

In his sole point of error, Shannon contends the trial court erred by interpreting his allegations as "an action that is 'essentially' a tort claim governed by the two-year statute." He asserts that his fraud allegations constitute a timely common-law fraud action subject to the four-year statute of limitations, rather than a time-barred tort claim.

Appellees argue in three counterpoints that the trial court correctly applied the two-year statute of limitations and granted summary judgment because Shannon's allega-

tions are, in substance, a false imprisonment tort action rather than a common-law fraud action as pled. They additionally challenge Shannon's point of error on the bases that his pleadings were insufficient and his responsive summary judgment proof did not adequately establish a question of fact on damages.

### STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[5] The burden of proof is on the movant.[6] All doubts about the existence of a genuine issue of a material fact are resolved against the movant.[7] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[8]

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true.[9] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[10]

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established.[11] To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of

4.  See Tex.R. Civ. P. 63.

5.  See Tex.R. Civ. P. 166a(c); Cate v. Dover Corp., 790 S.W.2d 559, 562 (Tex.1990); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.1979).

6.  See Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301–02 (Tex.1990).

7.  See Cate, 790 S.W.2d at 562; Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.1965).

8.  See Great Am., 391 S.W.2d at 47.

9.  See Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex.1995); Montgomery v. Kennedy, 669 S.W.2d 309, 311 (Tex.1984).

10.  See Great Am., 391 S.W.2d at 47.

11.  See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.1995); Rosas v. Buddies Food Store, 518 S.W.2d 534, 537 (Tex.1975).

material fact with regard to the element challenged by the defendant.[12] A defendant as movant may also prevail on a summary judgment motion by pleading and conclusively establishing each essential element of an affirmative defense.[13] A summary judgment for the defendant is only proper if the plaintiff could not succeed as a matter of law upon any theories pled.[14]

## ALLEGATIONS OF FRAUD

The claim that Shannon labels a fraud claim primarily consists of allegations that Appellees "misrepresented the nature, extent, content or financial consequences of the treatment he would or should receive from them...." Shannon alleged fraud, deceit, and intimidation by Appellees resulting in "willful and unlawful detention, illegal incarceration, unwarranted and willful intrusion into his marital and personal life at home and at work, and ... the sale of personal assets to cover fraudulent medical bills."

A claim for misrepresentation that can be read as a common-law fraud action is governed by the four-year statute of limitations.[15] The elements of common-law fraud or misrepresentation are: 1) a material misrepresentation was made; 2) the misrepresentation was false; 3) it was false at the time it was made; 4) the speaker knew it was false or made the misrepresentation recklessly without any knowledge of its truth or falsity; 5) the misrepresentation was made with the intention that it be acted upon by the recipient; 6) the recipient did act in reliance; and 7) the recipient was injured as a result of that reliance (i.e. damages).[16] Shannon tracked these elements in his fraud allegations in his second amended original petition.

Pleadings shall be construed so as to do substantial justice, and the general rule that pleadings are construed in favor of the pleader is particularly applicable in a summary judgment proceeding.[17] Shannon's live pleading at the time of the summary judgment hearing was his second amended original petition. In addition to tracking the elements of fraud, this pleading contained specific allegations that Appellees fraudulently and coercively obtained the 96–hour letter retractions.

Shannon claimed that false statements and misrepresentations made by Appellees and their agents were a common fraud used to convince patients to rescind 96–hour letters and that they were made with the intent of inducing Shannon to withdraw his 96–hour letters and remain hospitalized to his detriment. Shannon described the circumstances surrounding these retractions in his second amended original petition:

> During his incarceration at Brookhaven [Shannon] signed a number of 96–hour letters. Each time [Shannon] signed a 96–hour letter either or both Law–Yone and Kiser would do anything and everything within their power to coerce, pressure, trick and defraud [Shannon] to rescind his 96–hour letters, including enlisting the aid of [Shannon's] family members through fraudulent information, trickery and deceit. These coercions, pressures and persuasions included having mental health workers strap him down and telling him that they would have him transferred to Terrell State Mental Hospital to be committed for six months or longer. [Shannon] was threatened by Law–Yone and Kiser with being involuntarily committed and transferred to Terrell State Mental Hospital if

---

**12.** See *Centeq Realty,* 899 S.W.2d at 197.

**13.** See *Muckelroy v. Richardson School Dist.,* 884 S.W.2d 825, 828 (Tex.App.—Dallas 1994, writ denied).

**14.** See *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *Muckelroy,* 884 S.W.2d at 828–29.

**15.** See *M & M Distribs. v. Dunn,* 819 S.W.2d 639, 640 (Tex.App.—Corpus Christi 1991, no writ); see also *Williams v. Khalaf,* 802 S.W.2d 651, 656–57 (Tex.1990) (op. on reh'g).

**16.** See *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992); *Dunn v. Menassen,* 913 S.W.2d 621, 624–25 (Tex.App.—Corpus Christi 1995, writ denied); *First State Bank of Miami v. Fatheree,* 847 S.W.2d 391, 395 (Tex. App.—Amarillo 1993, writ denied).

**17.** See Tex.R. Civ. P. 45; *Smith v. Ortman–McCain Co.,* 537 S.W.2d 515, 517 (Tex.Civ. App.—Austin 1976, writ ref'd n.r.e.).

he did not rescind a given 96–hour letter on at least three occasions.

Shannon also specifically alleged that Appellees created false records as a basis for lengthening patients' stays to increase census and revenue, and that they misrepresented verbally to Shannon, his friends, and his family and in medical notes that he was suicidal, dangerous to his family, or a present danger to himself or others. He accused Appellees of fraudulently representing that his insurance company would not pay his medical bills and that he would be personally liable for them if he was discharged against medical advice (pursuant to a 96–hour letter). He further described their tactics of "falsely stating to a patient or to the spouse of a patient that the other wanted to terminate the relationship," "maliciously recommending that the relationship should be terminated," and "claiming the patient was dangerous to be around friends or family members."

We construe these allegations in Shannon's pleading to sufficiently set forth a cause of action for common-law fraud. This does not end our review, however, because Appellees maintain that the underlying substance of Shannon's claim prevails over the form. They substantively characterize Shannon's claim as a suit for emotional and mental anguish damages for personal injuries allegedly resulting from false imprisonment through duress, intimidation, and coercion, which they allege Shannon has couched in common-law fraud terms.

## APPLICABLE STATUTE OF LIMITATIONS

■ To determine which statute of limitations is applicable, we examine the basic substance of the pleadings rather than the mere form of the cause of action.[18] Shannon's

pleadings purport to allege common-law fraud rather than a tort claim for personal injury. He did not plead the fraud claim under the Deceptive Trade Practices–Consumer Protection Act (DTPA)[19] or as a health care liability claim under the Medical Liability and Insurance Improvement Act (MLIIA).[20] Appellees assert that because Shannon can avoid application of a two-year statute of limitations by pleading common-law fraud outside of the DTPA or the MLIIA, he has attempted to recast a claim that is essentially a personal injury claim as a fraud claim. Actions for personal injury are governed by the two-year statute of limitations.[21] In contrast, an action for fraud is one for a debt for limitations purposes and it is governed by the four-year statute.[22]

### Duress versus Fraud

Appellees cite *Castillo v. First City Bancorporation of Texas*[23] to support their classification of the substance of Shannon's cause of action as "constituted no more or no less by a theory of 'duress, which is inherently an action involving coercion and strong-arm tactics,' ... which in turn is nothing more nor less than a 'trespass,' defined as 'an unlawful interference with one's person, property, or rights.'" The issue in *Castillo*, however, was whether duress itself is a form of fraud and thereby governed by the four-year statute, or whether duress is classified as a trespass governed by the two-year statute. The complainants in that case conceded that their claim was, in substance and form, an action for duress and further attempted to characterize all duress claims as fraud actions.[24] In contrast, Shannon has adamantly presented a fraud claim throughout the litigation.

In holding that Texas law classifies duress claims in the trespass category governed by

**18.** See *Gallagher v. Bintliff,* 740 S.W.2d 118, 119 (Tex.App.—Austin 1987, writ denied).

**19.** A two-year statute of limitations applies to claims under the DTPA. See TEX. BUS. & COM.CODE ANN. § 17.565 (Vernon 1987).

**20.** See TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Pamph.1997) (setting a two-year statute of limitations for health care liability claims).

**21.** See TEX. CIV. PRAC. & REM.CODE ANN. § 16.003; *Perez v. Gulley,* 829 S.W.2d 388, 390 (Tex.App.— Corpus Christi 1992, writ denied).

**22.** See TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3); *Williams,* 802 S.W.2d at 656–58; *Perez,* 829 S.W.2d at 390.

**23.** 43 F.3d 953 (5th Cir.1994).

**24.** See *id.* at 962.

a two-year statute of limitations, the *Castillo* court relied on language in *Williams*. *Williams* distinguished common-law actions in trespass, which involved some violence, and actions in deceit or fraud.[25] Appellees contend that the presumption of trespass set forth in *Williams*, which applies to those torts "not expressly covered by a limitation provision nor expressly held by [the] court to be governed by a different provision,"[26] is dispositive in this case. The *Williams* court, however, clarified that all fraud actions are expressly and consistently governed by a four-year limitation period, regardless of the remedy sought.[27] Therefore, if Shannon's claim is an action for fraud, the presumption of trespass clearly does not apply.

*Castillo* further differentiated duress and fraud by characterizing duress as "inherently an action involving coercion and strong-arm tactics" with "subversion openly and by means of force" and fraud as implying that "a person's will was overcome by stealth or cunning."[28] Appellees state in their brief that "giving every reasonable construction and intendment to [Shannon's] allegations, the allegations involve 'coercion and strong-arm tactics.'" Although this may be an accurate claim regarding some of Shannon's allegations, such as workers strapping him down and threatening to transfer and commit him to a state mental hospital, there remain other allegations of specific misrepresentations by Appellees that cannot be dismissed as mere duress.

Texas courts have consistently classified claims of misrepresentation as claims for debt governed by the four-year statute of limitations.[29] For example, an insurance agent's alleged misrepresentation of the scope of an automobile insurance policy's coverage at the time he sold the policy was governed by the four-year statute of limitations covering debt actions.[30] Here, Shannon alleges that Appellees misrepresented the scope of his medical insurance coverage by falsely claiming that his insurance would not pay his medical bills and that he would be personally liable for them if he was discharged against medical advice and pursuant to a 96-hour letter.

■ To support their contention that this is a type of duress claim for personal injuries, Appellees state that Shannon made no allegations of misrepresentation of any "presently existing fact" under common-law fraud.[31] Rather, they contend that he complained only of threatening or coercive statements, such as references to possible loss of insurance benefits and warnings of his transfer to a mental institution. Shannon's affidavit, however, sufficiently raises a fact issue on whether Appellees misrepresented several presently existing facts, particularly his medical insurance policy coverage at that time and the present willingness of his family members to sign a protective custody order leading to his commitment in Terrell State Mental Hospital. In addition, Shannon's statements in his affidavit that he "only went to Brookhaven to detoxify from the prescription medication [he] was taking" and that he "was not seeking and [had] never sought, 'psychiatric help' in [his] life" raise a fact issue regarding his allegations that Appellees fraudulently stated to his friends and family and in medical notes that he was suicidal and a danger to himself or others.

25.   *Williams,* 802 S.W.2d at 656.

26.   *Id.* at 654; *see also Castillo,* 43 F.3d at 963; *First Nat'l Bank of Eagle Pass v. Levine,* 721 S.W.2d 287, 289 (Tex.1986).

27.   *Williams,* 802 S.W.2d at 658.

28.   *Castillo,* 43 F.3d at 963.

29.   *See Burton v. State Farm Mut. Auto. Ins. Co.,* 869 F.Supp. 480, 485 (S.D.Tex.1994), *aff'd,* 66 F.3d 319 (5th Cir.1995); *see also Williams,* 802 S.W.2d at 656–58 (referring to fraudulent repre-sentations); *M & M Distribs.,* 819 S.W.2d at 640 (finding allegation that distributor misrepresented to supplier amount he received for sale of goods constituted a common-law fraud action).

30.   *Burton,* 869 F.Supp. at 485–86.

31.   Texas cases require fraud actions to involve misrepresentation of present facts, not a promise to do something in the future, unless so made with the intent not to perform. *See Talley v. Howsley,* 142 Tex. 81, 176 S.W.2d 158, 160 (1943); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.,* 731 S.W.2d 620, 624 (Tex.App.—Houston [1st Dist.] 1987, no writ).

Because we cannot consider Appellees' controverted evidence in their affidavits and medical notes, and because we must accept all evidence favorable to Shannon as true, our review of the record does not establish that Shannon's allegations give rise to a duress claim based on threats of future actions as opposed to fraudulent misrepresentations of presently existing facts. Furthermore, we agree with Shannon's assertion that summary judgment is inappropriate in this case because the credibility of the affiants, Appellees, is likely to be a dispositive factor in the resolution of this case.[32]

## Commercial Aspects of Fraud

Appellees additionally assert that an actionable fraud claim must grow out of assumpsit-debt for the four-year statute of limitations in section 16.004 to apply.[33] *Williams* traced the roots of fraud in debt and assumpsit as a rationale for current classification of fraud actions as debt actions *for limitations purposes.*[34] It does not necessarily follow, however, that all present fraud actions must be rooted in debt, only that they are treated as if so. *Williams* clarified that "the classification of 'debts' is not restricted to the original common law actions for debt."[35]

Appellees stress that both *Williams* and *Castillo* were commercial fraud cases to support their contention that because Shannon's cause is not commercial or debt-related in nature, it does not qualify as actionable common-law fraud. *Williams* involved contract fraud resulting in lost profits, and *Castillo* involved fraud in commercial real estate transactions. Both *Williams* and *Castillo*, however, focus on the nature of fraud cases as involving deceit, cunning, and stealth, as opposed to violence or force.[36] The generally

accepted rule is that there can be no all-embracing definition of fraud because it is a multiform and elusive term.[37] "[F]raud has been defined as any cunning or artifice used to cheat or deceive another and it is synonymous with bad faith, overreaching, and dishonesty."[38] Shannon's affidavit, at least in part, complains of the use of deceit, cunning, and dishonesty by Appellees, rather than violence or force.

Although Shannon's claim is not commercial in nature, it does involve a business aspect because he alleges that the hospital continued to earn profits and he continued to incur bills for Appellees' services that he would not have incurred had he not relied on the alleged misrepresentations. Though he did not sue for recovery of personal monetary losses, Shannon repeatedly alleged that he sold personal assets to cover these bills in reliance on the alleged fraudulent misrepresentations.

The Dallas Court of Appeals recently applied the four-year statute of limitations to a similar situation and concluded that the appellant presented a cause of action for fraudulent billing practices where he alleged that the Appellees provided legal services in a manner intended to fraudulently lengthen the duration and increase the scope of litigation to increase their billings.[39] Shannon similarly alleges that the Appellees deceived him in a manner intended to lengthen his stay at the hospital to increase their billings and profits.

■ Appellees seem to imply that Shannon's claim is not a fraud action because he seeks "personal injury damages" and not recovery of lost profits or other monetary losses. The elements of fraud, however, only require that the recipient be *injured* as a

---

32. See *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989).

33. See TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3).

34. See *Williams,* 802 S.W.2d at 656.

35. *Id.* at 657.

36. See *Castillo,* 43 F.3d at 962–63; *Williams,* 802 S.W.2d at 656.

37. See *First State Bank of Miami,* 847 S.W.2d at 395.

38. *Id.* at 395 (citing *Kinard v. Sims,* 53 S.W.2d 803, 805 (Tex.Civ.App.—Amarillo 1932, writ ref'd)).

39. See *Sullivan v. Bickel & Brewer,* 943 S.W.2d 477, 483 (Tex.App.—Dallas 1995, no writ).

result of reliance on a misrepresentation.[40] Appellees cite no case law limiting damages in fraud actions to exclude personal injury-type remedies, such as mental anguish. Conversely, *Williams* clearly states that *all* fraud actions are consistently governed by the four-year statute of limitations, regardless of the remedy sought.[41] Fraud has been described as deception intended to "induce another to part with property or to *surrender some legal right,* which accomplishes the end desired."[42] Here, Shannon contends that he was induced to surrender his legal right to end his voluntary confinement at Brookhaven. The mere fact that Shannon seeks damages more often associated with personal injury claims, i.e., emotional and mental anguish, is not determinative of which statute of limitations applies. In fact, several courts have already awarded mental anguish damages or allowed claims for such damages in fraud cases.[43]

### Health Care Liability

In their motion for summary judgment, Appellees also asserted that Shannon's claim is barred by the two-year statute of limitations applied to cases governed by the MLIIA.[44] The trial court added the following in a footnote to its order granting the motion for summary judgment:

> If this is regarded as a "health care liability claim", as it could be since the alleged fraud is in connection with procuring consent to medical care and hospital confinement, then the two-year limitation period of Art. 4590i, § 10.01, Rev. Civ. Stat., would apply. Although defendants urge this position, it is not necessary to reach it.

Unlike the trial court, we do reach this position because we have determined that Appellees' initial claim that Shannon has recast a personal injury suit is without merit.

■ The MLIIA contains the following statute of limitations expressly applicable to claims it governs:

> Notwithstanding any other law, no *health care liability claim* may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.[45]

The MLIIA further defines a "Health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.[46]

The MLIIA precludes suits brought under the DTPA that are based on a physician's breach of an accepted standard of medical care.[47] This is to prevent complainants from attempting to avoid standards in the MLIIA by recasting claims that a health care provider was negligent as DTPA actions, e.g., for knowing misrepresentations.[48]

■ Shannon did not bring this suit, however, as a DTPA action. Neither does he claim that Appellees were negligent or breached an accepted standard of care. Shannon does not allege negligence in his treatment or medical malpractice. We have

---

**40.** See *T.O. Stanley Boot Co.,* 847 S.W.2d at 222; *Dunn,* 913 S.W.2d at 624–25.

**41.** See *Williams,* 802 S.W.2d at 658; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.004.

**42.** *First State Bank of Miami,* 847 S.W.2d at 395 (emphasis added).

**43.** See *Fidelity & Guaranty Ins. Underwriters, Inc. v. Saenz,* 865 S.W.2d 103, 113 (Tex.App.—Corpus Christi 1993), *rev'd on other grounds,* 925 S.W.2d 607, 614 (1996) (concluding that evidence was insufficient to support award of mental anguish damages); *Dillard's Dept. Stores, Inc. v. Strom,*

869 S.W.2d 654, 658–60 (Tex.App.—El Paso 1994, writ dism'd by agr.) (allowing recovery of mental anguish damages for fraud).

**44.** See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01.

**45.** *Id.* (emphasis added).

**46.** *Id.* § 1.03(4).

**47.** See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 12.01(a); *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994).

**48.** See *Sorokolit,* 889 S.W.2d at 242.

already determined that Shannon has sufficiently set forth a cause of action for common-law fraud. Common-law fraud requires more than a mere negligent misrepresentation, because a negligent misrepresentation does not require knowledge of the falsity or reckless disregard of the truth or falsity of the representation at the time it was made.[49]

We thereby distinguish Shannon's cause of action for common-law fraud from suits governed by the MLIIA. We do not interpret any connection with procuring consent to medical care or hospital confinement as necessarily placing Shannon's claim under the MLIIA. Under the MLIIA, the definition of informed consent does not include misrepresentations.[50] For instance, a trial court's separate submission of jury questions on both informed consent and common-law fraud causes of action has been upheld where a surgeon allegedly misrepresented that a patient's toe and thumb would be normal after surgery.[51]

We conclude that Shannon's common-law fraud claim is not a "health care liability claim" as defined by the MLIIA. Therefore, the two-year statute of limitations set forth in the MLIIA does not bar Shannon's cause of action.

In sum, Shannon adequately pled and presented evidence of a cause of action for common-law fraudulent misrepresentation. This fraud claim is governed by the four-year statute of limitations, and summary judgment based on the two-year statute was improper.

### DAMAGES

In their last counter-point, Appellees assail Shannon's claim on the ground that he failed to "set forth recoverable damages under any theory or remedy." They base this attack on vagueness in his pleadings and affidavit, where he merely states he "suffered enormous emotional strain, trauma and anguish as a result of [his] reliance on [the] false statements." While this point may have some merit, we note that they have asserted it for the first time on appeal.

■■■ The motion for summary judgment must expressly state the grounds on which it is made, and in determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence.[52] The purpose of this requirement is to provide the opposing party with adequate information for opposing the motion and to define the issues for the purpose of summary judgment.[53]

■■■ Appellees did not move for summary judgment on Shannon's failure to sufficiently plead or prove damages. They limited their summary judgment focus to the *nature* of damages alleged by Shannon rather than the adequacy of the amount of damages. Therefore, they cannot now raise this ground as a reason for upholding the summary judgment below.

### CONCLUSION

Appellees have not conclusively established their affirmative defense that Shannon's case is barred by the two-year statute of limitations.[54] Shannon's claim for fraud is governed by the four-year statute of limitations. Thus, the trial court erred in applying the two-year statute of limitations and in granting summary judgment. We sustain Shannon's sole point of error and reverse the trial court's judgment and remand the case for trial.

49. *See Milestone Properties, Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 119 (Tex.App.—Austin 1993, no writ).

50. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.02; *Melissinos v. Phamanivong*, 823 S.W.2d 339, 344 (Tex.App.—Texarkana 1991, writ denied).

51. *See Melissinos*, 823 S.W.2d at 344.

52. *See McConnell v. Southside I.S.D.*, 858 S.W.2d 337, 341 (Tex.1993).

53. *See Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex.1978); *Camden Machine & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 309 (Tex.App.—Fort Worth 1993, no writ).

54. *See Muckelroy*, 884 S.W.2d at 828.