William A. BOOTHE, M.D., Individually and d/b/a Boothe Eye Care & Laser Center, Appellant

v.

Joe DIXON, Appellee.

No. 05–04–01260–CV.

Court of Appeals of Texas, Dallas.

Dec. 13, 2005.

Carol Elaine Davis, Edward P. Quillin, Quillin Law Firm, P.C., Dallas, for appellant.

Robert C. Sullivan, Jr., Tracey Edward Gajak, Sullivan Parker & Cook, Kent Frank Brooks, Law Office of Kent F. Brooks, Dallas, for appellee.

Before Justices WRIGHT, MOSELEY, and LANG.

## OPINION

Opinion by Justice MOSELEY.

In a single issue, William A. Boothe, M.D., individually and d/b/a Boothe Eye Care and Laser Center, challenges the trial court's order denying Boothe's motion to dismiss and motion for summary judgment on grounds that Joe Dixon failed to comply with the expert report requirements of section 74.351(b) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2005). Because we conclude that Dixon's claims are "health care liability claims" making them subject to section 74.351(b), we resolve Boothe's issue in his favor, reverse the trial court's order, render judgment dismissing Dixon's claims with prejudice, and remand this case solely for a determination of reasonable attorney's fees and costs of court incurred by Boothe.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Based on Dixon's allegations, Dixon sought treatment for his vision from Boothe and underwent laser eye surgery in July 2001. His eyesight improved, but "then dramatically deteriorated." Dixon contacted Boothe, who told Dixon that he needed "touch up" surgery. Boothe performed another laser surgery, after which Dixon's vision did not significantly improve and "began further deterioration." Dixon reported this result to Boothe, who told Dixon a new procedure called "custom abrasion" would be approved within the next year and that this surgery would solve Dixon's problems. Boothe told Dixon he would be an "ideal candidate" for custom abrasion and he would refund Dixon's money on the two previous surgeries.

Based on Boothe's representations that custom abrasion would be available and would solve Dixon's problems, Dixon and his wife executed a "Release of All Claims" in November 2002.[1] In April 2003, Dixon contacted Boothe's office, but was informed that Boothe did not see patients after one year. Subsequently, Dixon learned that he was not a candidate for the initial surgery or the touch up surgery and, as a result of the two surgeries, he was not a candidate for custom abrasion.

In his first amended petition, Dixon asserted claims for fraud, breach of fiduciary duty, and violation of the DTPA.[2] As to the fraud claim, Dixon alleged Boothe made material representations to Dixon to induce him into obtaining the first and touch up laser eye surgeries and executing the Release of All Claims. As to the breach of fiduciary claim, Dixon alleged Booth "made misrepresentations to Plaintiff regarding the appropriateness of and availability of medical procedures to induce Plaintiff into executing the 'Release of All Claims.'" As to the DTPA claim, Dixon alleged Boothe "engaged in an unconscionable course of action in misrepresenting the availability of future medical procedures to Plaintiff"; "represented that an agreement conferred or involved rights, remedies, or obligations which it does not have or involve"; "knowingly made false or misleading statements of fact concerning the need for corrective service"; "failed to disclose information about goods or services that was known at the time of the transaction to induce Plaintiff into entering into a transaction that the consumer would not have entered into had the information been disclosed"; and "further represented that Plaintiff had an astigmatism to 'upcharge' Plaintiff for the initial surgery." Dixon requested actual, economic, and exemplary damages, pre—and post-judgment interest, attorney's fees, costs, and injunctive relief.

Boothe filed a motion to dismiss and motion for summary judgment and a first amended and supplemental motion to dismiss. Boothe argued that all Dixon's claims were based on Boothe's medical treatment or medical opinion as to future events and thus were a recasting of medical negligence claims, which were subject to dismissal for failure to file an expert report within the deadline required by section 74.351(b). In addition, Boothe argued

1. The Release of All Claims provides, in pertinent part:

   IN CONSIDERATION of a reimbursement payment made to us in the sum of [$2,890], we, the undersigned being of lawful age, do hereby release [Boothe] and their successors, predecessors and agents, employees, partner and all those in privity with them form [sic] all claims or causes of action which we now or may hereafter have against the said [Boothe], including but not limited to claims arising out of Lasik eye surgery performed on Joe Dixon and claims not now known. We hereby declare that we fully understand the terms of this release and voluntarily accept the above stated sum for the purpose of making full and final settlement of our claim against [Boothe].

   WE FURTHER state that the foregoing release has been carefully read; and we understand the contents thereof and have signed the same as our own free act and have not been influenced in making this settlement by any representative of the party or parties released.

   WE FURTHER understand that the provisions of this release are contractual and not mere recitals. . . .

2. Dixon's original petition is not included in the record on appeal. Boothe contends that the only difference between the original petition and the first amended petition is that Boothe deleted claims for medical negligence from the first amended petition. Neither party contends that Dixon's factual allegations in his first amended original petition differed substantively from those in his original petition.

that Dixon's DTPA claims were barred by section 74.004 because they were recast medical negligence claims.[3] Boothe also argued that he was entitled to summary judgment because the Release of All Claims barred all claims as a matter of law. He requested attorney's fees and costs of court. Dixon responded to the motion to dismiss and motion for summary judgment. After a hearing, the trial court denied Boothe's motion to dismiss and motion for summary judgment without specifying the grounds on which its decision was based.

## II. MOTION TO DISMISS FOR FAILURE TO FILE EXPERT REPORT

In his single issue, Boothe argues that the trial court erred in denying his motion to dismiss because all Dixon's claims were improperly recast medical negligence claims subject to dismissal for noncompliance with the expert report requirement of section 74.351(b).

### A. Applicable Law and Standard of Review

The version of section 74.351(a) that applies to this case provided that a health-care liability claimant must file an expert report and curriculum vitae within 120 days after filing the claim. Act of June 2, 2003, 78th Leg., R.S., ch. 205, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2005)). If a required expert report has not been served by the 120–day deadline, on proper motion by the defendant the trial court "shall"

dismiss the action with prejudice and award reasonable attorney's fees and court costs incurred by the defendant. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

The expert report requirements of section 74.351(b) apply to a patient's claims, regardless of whether they are tort claims, when those claims come within the statutory definition of a "health care liability claim," defined as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13) (Vernon 2005). "Health care" is defined as:

> any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.

*Id.* § 74.001(a)(10) (Vernon 2005). "Medical care" is defined as:

> any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement.

*Id.* at § 74.001(a)(19) (Vernon 2005). "Practicing medicine" means

---

**3.** Section 74.004(a) provides: "Notwithstanding any other law, Sections 17.41–17.63, Business & Commerce Code, do not apply to physicians or health care providers with respect to claims for damages for personal inju-

ry or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider." TEX. CIV. PRAC. & REM.CODE ANN. § 74.004(a) (Vernon 2005).

the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:

(A) publicly professes to be a physician or surgeon; or

(B) directly or indirectly charges money or other compensation for those services.

TEX. OCC.CODE ANN. § 151.002(a)(13) (Vernon Supp.2005).

■ Artful pleading cannot avoid the requirements of section 74.351 when the essence of the suit is a health care liability claim. *Diversicare Gen. Partner, Inc. v. Rubio,* —— S.W.3d ——, ——, 2005 WL 2585490, at *7 (Tex. Oct. 14, 2005) ("It is well settled that a health care liability claim cannot be recast as another cause of action to avoid the requirements of the MLIIA"); *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 543 (Tex.2004); *MacGregor Med. Ass'n v. Campbell,* 985 S.W.2d 38, 40 (Tex.1998). To determine whether a cause of action falls under chapter 74's definition of a health care liability claim, we examine the claim's underlying nature. *Id.* (citing *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994)). If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, or if it is based on a breach of a standard of care applicable to health care providers, then the claim is a health care liability claim. *Id.* at 544 (citing *Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995)). One consideration in that determination may be whether proving the claim would require the specialized knowledge of a medical expert. *Garland Cmty. Hosp.,* 156 S.W.3d at 544 (citing *Rogers v. Crossroads Nursing Serv., Inc.,* 13 S.W.3d 417, 419 (Tex.App.-Corpus Christi 1999, no pet.)); *see Diversicare Gen. Partner, Inc.,*

—— S.W.3d at ——, 2005 WL 2585490, at *4. Whether a claim is a health care liability claim pursuant to section 74.351 is a question of law and is reviewed de novo. *Buck v. Blum,* 130 S.W.3d 285, 290 (Tex. App.-Houston [14th Dist.] 2004, no pet.); *Ponce v. El Paso Healthcare Sys., Ltd.,* 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied); *Gomez v. Matey,* 55 S.W.3d 732, 735 & n. 2 (Tex.App.-Corpus Christi 2001, no pet.).

**B. Discussion**

■ Boothe argues that Dixon improperly recast medical negligence claims to avoid dismissal. Boothe argues that all Dixon's claims are intertwined with Boothe's rendition of medical services, which involved Boothe's diagnosis of Dixon's medical condition and Boothe's medical judgment and advice as to the choice of medical procedures; the potential risks and complications such as visual deterioration and candidacy for further medical treatment; and Dixon's alleged physical injury from the two surgeries. We agree.

To prove that Boothe's diagnoses and treatment were to Dixon's detriment, Dixon would have to provide proof of his medical condition before and after the laser surgeries and in relation to custom abrasion. Dixon must also prove Boothe undertook a mode or form of treatment that a reasonable and prudent member of the medical profession would not undertake under the same or similar circumstances and rely on expert medical testimony. *See Gomez,* 55 S.W.3d at 735 (concluding allegations of "knowing" misrepresentation regarding necessity of hysterectomy a health care liability claim). Dixon's claim that Boothe's misrepresentations regarding the release were improper is an inseparable part of Boothe's rendition of medical services because Dixon's claim rests on alleged misrepresenta-

tions regarding medical care and treatment. *See Parker v. CCS/Meadow Pines, Inc.,* 166 S.W.3d 509, 513 (Tex.App.-Texarkana 2005, no pet.) (concluding allegations of improper restraint related to course of care or treatment a health care liability claim); *Williams v. Walker,* 995 S.W.2d 740, 741–42 (Tex.App.-Eastland 1999, no pet.) (concluding allegations of assault and battery regarding use of medical procedure without patient's consent a health care liability claim).

■ Nevertheless, Dixon contends that his cause of action for fraudulent misrepresentation in procuring a release of health care liability claims is not within the report requirements of chapter 74 because Boothe knowingly made a false statement about Dixon's condition. Dixon contends that this representation constitutes fraud pursuant to *Shannon v. Law–Yone,* 950 S.W.2d 429 (Tex.App.-Fort Worth 1997, pet. denied). In *Shannon,* the plaintiff alleged specific fraudulent conduct in connection with keeping him hospitalized, including deceiving him into rescinding requests for release, creating false records, misrepresenting that insurance would not cover his medical bills if he were released against medical advice, and misrepresenting his condition to others. *Id.* at 432–34. The plaintiff did not allege negligence in his treatment or medical malpractice. *Id.* at 437. However, an allegation that a misrepresentation is made "knowingly" is not determinative when analyzing the underlying nature of a claim. *See Savage v. Psychiatric Inst. of Bedford, Inc.,* 965 S.W.2d 745, 752 (Tex.App.-Fort Worth 1998, pet. denied). Here, the underlying nature of the claim is whether Dixon would be a candidate for custom abrasion after two laser surgeries, which is a question of medical condition, diagnosis, and treatment. *See id.* Consequently, *Shannon* is distinguishable.

Moreover, the only question at this stage is whether the underlying nature of each of Dixon's claims is a health care liability claim; this is a threshold requirement, not a recovery requirement. *See Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005) (per curiam). Consequently, Dixon's reliance on cases regarding the submission of issues of fraud and informed consent in medical malpractice cases is misplaced. *See Gaut v. Quast,* 510 S.W.2d 90 (Tex.1974) (per curiam); *Crundwell v. Becker,* 981 S.W.2d 880 (Tex.App.-Houston [1st Dist.] 1998, pet denied); *Melissinos v. Phamanivong,* 823 S.W.2d 339 (Tex.App.-Texarkana 1991, writ denied).

Relying primarily on *Sorokolit,* Dixon next argues that statements amounting to specific promises of cure or a particular result are actionable under the DTPA. In *Sorokolit,* 889 S.W.2d at 240, a surgeon "guaranteed and warranted" a specific result, instructing the plaintiff to select a picture and promising, following surgery, her breasts "would look just like those in the picture she selected." Here, in contrast, Boothe's alleged representations were that Dixon was an "ideal candidate" for custom abrasion that would "resolve his problems." Thus, the alleged representation related to a possible future procedure that was never performed; in any event, they were not the specific statements necessary to establish a knowing misrepresentation or breach of an express warranty regarding the results of treatment. *See Mulligan v. Beverly Enters.-Tex. Inc.,* 954 S.W.2d 881, 884 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (contrasting representations as to guaranteeing a particular result to representations as to providing care and service).

Finally, Dixon contends that any medical malpractice claim is the basis of his damages, not his claims in this suit. However, there are no separate damages pleaded as

between a fraudulent inducement claim and other claims. Moreover, proof of the economic value of the claims released requires proof of those claims, that is, whether Boothe's medical and treatment of Dixon met the applicable standard of care.

## CONCLUSION

We conclude that all Dixon's claims meet the statutory definition of a "health care liability claim" and are thus subject to the expert report requirement of section 74.351(b), and we reject all Dixon's arguments to the contrary. Accordingly, we resolve Boothe's issue in his favor. Because of our resolution of Boothe's argument regarding section 74.351(b), we need not address his argument regarding section 74.004. Because Dixon failed to file an expert report as required by section 74.351(b), we reverse the trial court's order denying motion to dismiss and motion for summary judgment and render judgment in Boothe's favor dismissing Dixon's claims with prejudice.

In his motion to dismiss and motion for summary judgment and in his prayer in his brief on appeal, Boothe requested attorney's fees and costs of court, which are mandatory under the statute when a claimant fails to file an expert report in a health care liability claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b)(1). Accordingly, we remand this suit solely for a determination of attorney's fees and costs of court incurred by Boothe.