COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-202-CV

MIRTHA GARZA, INDIVIDUALLY APPELLANT

AND AS REPRESENTATIVE OF

THE ESTATE OF ISIDRO 

REYES, III

 V.

STATE AND COUNTY MUTUAL APPELLEE

FIRE INSURANCE COMPANY

------------

FROM THE 352ND
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------ 

Appellant Mirtha Garza, individually and as representative of the estate of Isidro Reyes, III, appeals an order transferring venue from Starr County to Tarrant County and a subsequent order granting summary judgment in favor of Appellee, State and County Mutual Fire Insurance Company (“State and County”).  Because there is probative evidence supporting the Starr County trial court's transfer of venue to Tarrant County, and because State and County conclusively negated an element of Garza's fraud claim, we will affirm.

I.  Factual and Procedural Background

In 2002, Jose Mascorro crashed his vehicle into a child, Isidro Reyes, III, who was riding a bicycle.  Reyes died as a result of the accident.  The fatal accident occurred in Starr County.  Jose Mascorro had automobile liability coverage under two different insurance policies.  Both were State and County policies, but they were administered by different managing general agencies.  The first State and County policy was administered by Underwriters Managing General Agency (“Underwriters”) and had a policy limit of $20,013.  The second State and County policy was administered by Wellington Financial Services, Inc. (“Wellington”) and had a policy limit of $20,004.   

Shortly after the collision, Mirtha Garza, the mother of Isidro Reyes, III, retained an attorney who began to investigate whether any automobile  insurance policies existed covering Jose Mascorro.  Garza’s attorney soon discovered that Jose Mascorro, a State and County insured, actually had two policies; Garza’s attorney was not initially aware that the two policies were both issued by State and County.   Consequently, Garza’s attorney sent separate demand letters to Underwriters and Wellington demanding that each of them tender their respective policy limits.  Both Underwriters and Wellington attempted to settle their respective claims for each policy’s limit, and were both initially unaware that the other was doing the same.  

An adjuster for Underwriters sent Garza’s attorney a letter advising him that Underwriters would tender $20,013 as a full and final settlement of Garza’s claim.  Approximately one month after the Underwriters’ tender, an adjuster for Wellington also sent Garza’s attorney a letter advising him that Wellington would tender $20,004 to settle Garza’s claim.  In response to both Underwriters’ and Wellington’s offers to settle her claims, Garza’s attorney sent letters to both Underwriters and Wellington, requesting that they send the appropriate settlement documents so that Garza could resolve the matter.  Underwriters and Wellington sent Garza’s attorney the proposed releases, but neither obtained a properly executed release.
(footnote: 2)   

At some point, State and County determined that two of its managing general agencies—Underwriters and Wellington—were negotiating settlements for two separately filed claims, both of which sought coverage for the same event.  Consequently, State and County retained a new attorney to prepare a release, which offered Garza $20,004 in exchange for a full and final release of all claims against State and County, including the two claims negotiated by Underwriters and Wellington.
(footnote: 3)  The full and final release reads as follows:

NOW THEREFORE, for and in consideration of the receipt of the sum of Twenty Thousand Four and No/100 Dollars ($20,004.00), . . . Mirtha Garza, individually and as representative of the estate of Isidro Reyes, III, . . . hereby ACQUIT, RELEASE and FOREVER DISCHARGE . . . State and County Mutual Fire Insurance Company . . . and [its] agents, . . . employees, servants, representatives, predecessors, successors, . . . insurers, reinsurers, directors, officers, subsidiaries, . . . shareholders, affiliates, and joint ventures . . . of and from any and all claims, remedies, demands, . . . causes of action, or liabilities, including but not limited to claims for wrongful death, . . . whether known or unknown, accrued or unaccrued, or suspected or unsuspected . . . on account of, or in any way growing out of, or which are subject of, the accident occurring on or about March 23, 2002 . . . .

Upon receipt of this proposed full and final release, Garza’s attorney reviewed it, discussed it with Garza, had Garza sign it, and on June 11, 2003 faxed the signed version back to State and County’s attorney.   

Approximately one month later, another attorney retained by Underwriters sent Garza a second release without knowing that Garza had already executed the aforementioned full and final release covering both claims.  This second release reflected the policy limit for the Underwriters’ policy—$20,013.    Garza signed this second release on July 28, 2003.  On the same day, Garza endorsed the settlement check for $20,004 from the first release, and her attorney deposited the check in his IOLTA account.
(footnote: 4)  Garza never received the $20,013 amount reflected in the second release. 

Consequently, Garza filed a fraud claim against State and County in Starr County, Texas, alleging that venue was proper in Starr County because “all or part of the cause of action arose in Starr County, Texas.”  State and County filed a motion to transfer venue, arguing that the events giving rise to the fraud claim—the alleged fraudulent misrepresentations—occurred in Tarrant County.  Garza subsequently amended her original petition by adding Jose Mascorro as a defendant and alleging that venue was proper in Starr County because “all or part of the cause of action arose in Starr County, Texas; and, Defendant Jose A. Mascorro is a resident of Starr County, Texas.”  Aside from the amended petition, Garza did not file a response to State and County’s motion to transfer venue until three days before the Starr County court granted the motion and transferred the fraud claim to Tarrant County.  

After the transfer, State and County filed a traditional and no-evidence motion for summary judgment.  
See 
Tex. R. Civ. P.
 166a(b), (i).  The Tarrant County court granted summary judgment in favor of State and County, and Garza appealed to this court. 

II.  Venue Proper in Tarrant County

In her first issue, Garza contends that the Starr County court erred by granting State and County’s motion to transfer venue to Tarrant County because a substantial part of the events or omissions giving rise to the fraud claim occurred in Starr County.  Specifically, Garza alleges that venue was proper in Starr County because it is the county where the wreck occurred and the county the parties to the wreck lived.  

A.  Standard of Review

In reviewing a venue decision, the appellate court must conduct an independent review of the entire record, including the trial on the merits if applicable, to determine whether any probative evidence supports the trial judge's venue decision. 
Tex. Civ. Prac. & Rem.Code Ann
. § 15.064(b) (Vernon 2002); 
Chiriboga v. State Farm Mut. Auto. Ins. Co.
, 96 S.W.3d 673, 677 (Tex. App.—Austin 2003, no pet.); 
see Wilson v. Tex. Parks & Wildlife Dep't
, 886 S.W.2d 259, 261 (Tex. 1994). We review the evidentiary record in the light most favorable to the venue ruling; however, no deference is given to the trial court's application of the law. 
Chiriboga
, 96 S.W.3d at 677-78 (citing
 Ruiz v. Conoco, Inc.
, 868 S.W.2d 752, 758 (Tex. 1993)). If there is any probative evidence in the entire record that venue was proper, we must uphold the trial judge's ruling. 
Bonham State Bank v. Beadle
, 907 S.W.2d 465, 471 (Tex. 1995); 
Ruiz
, 868 S.W.2d at 758. 

B.  Venue Transfers

Venue selection presupposes that the parties to the lawsuit have choices and preferences about where their case will be tried.  
Wilson
, 886 S.W.2d at 260.  Because venue may be proper in numerous counties, the plaintiff is given the first choice to fix venue in a proper county and does so by filing suit in the county of her choosing.  
Id.
; 
Eddins v. Parker
, 63 S.W.3d 15, 18 (Tex. App.—El Paso 2001, pet. denied).  If a plaintiff files suit in an improper county, she waives her first choice of venue, and the defendant may have the suit transferred to another county, as long as venue is proper in that county.  
Wilson
, 866 S.W.2d at 260; 
WFTO, Inc. v. Braithwaite
, 899 S.W.2d 709, 716 (Tex. App.—Dallas 1995, no writ); 
see also
 
Tex. Civ. Prac. & Rem. Code Ann
. § 15.063(1) (Vernon 2002) (providing that trial court shall transfer action to another county of proper venue if county in which action is pending is not a proper county).  In such a case, the defendant also must make prima facie proof that venue is maintainable in the county to which transfer is sought.  
Tex. R. Civ. P
. 87(2)(a)-(b), (3)(a); 
Wilson
, 886 S.W.2d at 260 n.1.

All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party.  
Tex. R. Civ. P.
 87(3)(a).  If a defendant objects to the plaintiff's venue choice and properly challenges that choice through a motion to transfer venue, the question of proper venue is raised.  
Wichita County v. Hart
, 917 S.W.2d 779, 781 (Tex. 1996); 
Wilson
, 886 S.W.2d at 260-61; 
see
 
Tex. R. Civ. P
. 86(3), 87(2)(b).  Once the defendant specifically denies the pleaded venue facts, the burden is on the plaintiff to prove that venue is maintainable in the county of suit.  
Wilson
, 886 S.W.2d at 261; 
see 
Tex. R. Civ. P
. 87(2)(a)-(b).
(footnote: 5)
 To meet this burden, the plaintiff must make prima facie proof of the pleaded venue facts that the defendant has denied.  
Tex. R. Civ. P
. 87(3)(a).  Prima facie proof is made when the venue facts are properly pleaded and an affidavit and any duly proved attachments to the affidavit fully and specifically setting forth the facts supporting such pleading are filed.  
Id.
; 
WTFO
, 899 S.W.2d at 715; 
see also Rodriguez v. Printone Color Corp.
, 982 S.W.2d 69, 72 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("A prima facie case represents

the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true.").  The affidavit must be made on personal knowledge, set forth specific facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify.  
Tex. R. Civ. P
. 87(3)(a); 
WTFO
, 899 S.W.2d at 715.

The trial court shall determine the motion on the basis of the pleadings, the parties' stipulations, and the affidavits and any proper attachments thereto.  
Tex. R. Civ. P
. 87(2)(b), 88; 
Tex. Civ. Prac. & Rem. Code Ann
. § 15.064(a); 
Eddins
, 63 S.W.3d at 18.  If the plaintiff adequately pleads and makes prima facie proof that venue is proper in the county of suit, then the trial court must not transfer the case.  
Tex. R. Civ. P
. 87(3)(c); 
see also Wilson
, 886 S.W.2d at 261 ("Together, Rule 87-3 (c) and section 15.063(1) require that a lawsuit pleaded and proved to be filed in a county of proper venue may not be transferred.").  In that situation, no other county can be a proper county of venue, even if the county of transfer also would have been proper if originally chosen by the plaintiff.  
Wilson
, 886 S.W.2d at 261;
 Jaska v. Tex. Dep't of Protective & Regulatory Servs.
, 106 S.W.3d 907, 909-10 (Tex. App.—Dallas 2003, no pet.).  This rule gives effect to the plaintiff's right to select a proper venue.  
Wilson
, 886 S.W.2d at 261.  But if a defendant properly challenges venue and asserts venue facts, and the plaintiff never specifically denies those venue facts, they are taken as true.  
See 
Tex. R. Civ. P.
 87(3)(a);
 GeoChem Tech. Corp. v. Verseckes
, 962 S.W.2d 541, 543 (Tex. 1998)
.  

C.  Probative Evidence that Transfer to Tarrant County was Proper

To properly determine whether the record demonstrates any probative evidence supporting the venue transfer to Tarrant County, we must first understand the nature of the claim.  As State and County correctly indicates in its brief, the fraud claim made the subject of the venue motion does not involve the wreck that occurred in Starr County.
(footnote: 6)  Accordingly, when reviewing the record to determine if there is any probative evidence supporting the trial court’s transfer of venue, we look to venue facts involving the alleged acts giving rise to the fraud claim, not the alleged venue facts involving the wreck.  
See Lynn Smith Chevrolet—GEO, Inc. v. Tidwell
, 161 S.W.3d 738, 743-44 (Tex. App.—Fort Worth 2005, no pet.) (examining facts regarding location of repossession rather than facts regarding location of contract formation in claim asserting wrongful repossession).

State and County properly challenged Garza’s initial venue choice when it filed its motion to transfer venue.  
See Hart
, 917 S.W.2d at 781.  In that motion to transfer venue, State and County specifically denied all venue facts alleged by Garza, and themselves alleged that

[a]ll of the actions of State and County, including its purported breach of a contract and alleged misrepresentations, took place outside of Starr County, Texas.  Specifically, all of the actions and conduct of State and County took place from its principal and only office in the State of Texas in Tarrant County.

Once State and County properly raised the issue of venue, Garza then bore the burden of proving that venue was maintainable in Starr County.  
See Wilson
, 886 S.W.2d at 261.  But rather than meeting her burden by offering prima facie proof that venue was proper in Starr County, Garza did not file a response to State and County’s motion to transfer venue before the hearing on the motion.  Instead, Garza amended her petition seven days prior to that hearing, adding Jose Mascorro as a defendant and alleging that venue was proper because he was a resident of Starr County.  But adding Jose Mascorro as a defendant did not meet Garza’s burden of offering prima facie evidence that venue was proper in Starr County because Jose Mascorro was not a proper party to Garza’s fraud claims against State and County.
(footnote: 7)  
See, e.g., Acker v. Denton Publ’g Co.
, 937 S.W.2d 111, 117 (Tex. App.—Fort Worth 1996, no writ) (holding that prima facie evidence not established through venue allegations against defendant who is not a proper party).

Garza did, however, file a response to State and County’s motion to transfer three days after the trial court’s hearing on the motion.  In that response, Garza did not specifically deny any of the venue facts alleged in State and County’s motion to transfer venue.  Rather, Garza asserted that venue was proper in Starr County because Jose Mascorro was a resident thereof and that her “cause of action for fraud and misrepresentation did not arise until [State and County] misrepresented that they would pay policy limits . . . on [Jose Mascorro’s] automobile insurance policy.”  Because Garza did not specifically deny the venue facts alleged in State and County’s motion to transfer venue, we take those facts as true.  
See 
Tex. R. Civ. P.
 87(3)(a).  

After reviewing the entire record in the light most favorable to the venue ruling, including all summary judgment evidence subsequently produced, we hold that there is probative evidence supporting the trial court’s transfer of venue to Tarrant County because there is probative evidence demonstrating that a substantial part of the events or omissions giving rise to the fraud claim occurred in Tarrant County.  
See Chiriboga
, 96 S.W.3d at 677.  Accordingly, we overrule Garza’s first issue.

III.  Summary Judgment Analysis

In her second issue, Garza contends that the trial court erred by granting State and County’s motion for summary judgment because there was evidence raising genuine issues of material fact on the elements of her fraud claim.  Under that claim, Garza had the burden to prove that (1) State and County made a material misrepresentation, (2) the misrepresentation was false, (3) it was false at the time it was made, (4) State and County knew it was false or made the misrepresentation recklessly without any knowledge of its truth or falsity, (5) the misrepresentation was made with the intention that it be acted upon by Garza, (6) Garza did act in reliance, and (7) Garza was injured as a result of that reliance.  
See Shannon v. Law-Yone
, 950 S.W.2d 429, 433 (Tex. App.—Fort Worth 1997, writ denied).

State and County argues that it conclusively negated the sixth, justifiable reliance element of Garza’s fraud claim by proving Garza executed the settlement agreement.  A party may waive subsequent fraud claims through a settlement agreement.  
See, e.g., Schlumberger Tech. Corp. v. Swanson
, 959 S.W.2d 171, 181 (Tex. 1997) (holding that release provision disclaiming reliance on other party's representations conclusively negated element of fraudulent inducement claim); 
Atl. Lloyds Ins. Co. v. Butler
, 137 S.W.3d 199, 218 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (same).  We must give effect to such waivers because "[p]arties should be able to bargain for and execute a release barring all further dispute."  
Schlumberger
, 959 S.W.2d at 179.
 
 But not all agreements are binding.  
Id.
 at 181.  We must look to the agreement itself and the circumstances surrounding its formation to properly determine whether the waiver is binding.  
See id.
; 
Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.
, 940 S.W.2d 587, 591 (Tex. 1996).  We look to several factors in making such determinations, including whether both parties were represented by counsel, whether the parties negotiated and dealt with each other at arm's length, and whether the parties were knowledgeable and sophisticated.  
See Schlumberger
, 959 S.W.2d at 180.

Garza contends that this case differs from 
Schlumberger
 because the circumstances surrounding the formation of the settlement agreement here differ from the circumstances surrounding the formation of the release at issue in 
Schlumberger
.  In 
Schlumberger
, both parties were represented by counsel, negotiated for approximately thirteen months, corresponded primarily through their attorneys, and had a vast array of knowledge and experience in diamond mining.  
Id.
 at 173-74.  At the conclusion of their negotiations, the parties executed a release, which stated that the plaintiffs were not "relying upon any statement or representation of any agent of the parties being released hereby."  
Id.
 at 180.  The court held that "a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement."  
Id.
 at 181.

Garza is correct in that a distinvction may be drawn between the facts here and those in 
Schlumberger 
based on the difference in knowledge and sophistication between State and County—an insurance company dealing with insurance claims on a daily basis—and Garza—an insured who arguably had less experience with insurance claims.  But Garza was represented by counsel, and the other facts here are closely analogous to those in 
Schlumberger
. Wellington and Underwriters were likewise both represented by one or more attorneys at all times.  Garza, through her attorney, corresponded with both Wellington and Underwriters for approximately ten months prior to signing the settlement agreement.  And like the plaintiff in 
Schlumberger
, after several months of correspondence with adjusters and attorneys on both the Wellington and Underwriters claims, Garza entered into a settlement agreement that "ACQUIT[ED], RELEASE[ED], and FOREVER DISCHARGE[D] . . . State and County . . . from any and all claims . . . including but not limited to . . . unfair settlement practices, deceptive trade practices, and all other claims of any nature whatsoever."  

But most importantly, 
the settlement agreement also contained a provision disclaiming reliance on any representations made by Wellington, Underwriters, or State and County.  That provision read,

The undersigned acknowledge and represent that they have relied upon the advice of their attorneys, who are the attorneys of their own choice, that they have read the terms of this Release and Indemnity Agreement, that those terms have been completely explained to them by their attorneys, and that those terms are fully understood and voluntarily accepted by each of the Parties.  The undersigned further state that they do not rely and have not relied upon any representation or statement made by any of the Released Parties or any of their officers, agents, representatives, or attorneys with regard to the terms of this Release and Indemnity Agreement, any facts pertaining to, involved in or relating to this controversy, or any rights or asserted rights they may have, and they hereby assume the risk of any mistake of fact in connection with the true facts involved in said controversy or with regard to any facts which are now unknown to them relating thereto.

. . . The undersigned also represent that they are relying solely on their own advice and judgment and that of their attorneys and they are not relying on any other person or entity for explanation or consequences of this Release and Indemnity Agreement.

State and County forwarded the proposed settlement agreement containing this language to Garza's attorney.  In his deposition, Garza's attorney testified that after he received a copy of the settlement agreement, he reviewed it, discussed it with Garza, had Garza sign the release, and faxed the signed version back to State and County’s attorney approximately fourteen days after receiving it.  

Taking as true all evidence favorable to Garza, the nonmovant, and indulging every reasonable inference and resolving any doubts in her favor, we hold that State and County was entitled to summary judgment because it conclusively negated the justifiable reliance element of Garza's fraud claim.  
See 
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004).
  State and County conclusively established, through the settlement agreement, that Garza did not rely on any alleged fraudulent misrepresentation made by State and County in executing the settlement agreement.  
See
 
Schlumberger
, 959 S.W.2d at 181; 
Atl. Lloyds Ins. Co.
, 137 S.W.3d at 218.  

Although State and County filed both traditional and no-evidence motions for summary judgment and the trial court’s order granting summary judgment did not reflect whether it granted the traditional or no-evidence summary judgment, we can affirm the summary judgment if any theory presented to the trial court and preserved for appellate review is meritorious.  
See Provident Life & Accident Ins. Co. v. Knott
, 128 S.W.3d 211, 215 (Tex. 2003).  We therefore affirm the trial court’s grant of summary judgment on State and County’s traditional summary judgment motion and need not address arguments on its no-evidence motion.  
See 
Tex. R. App. P.
 42.1.  We overrule Garza's second issue.

IV.  Conclusion

Because there is probative evidence supporting the trial court’s transfer of venue to Tarrant County, we overrule Garza's first issue.  
See Chiriboga
, 96 S.W.3d at 677.  Because the settlement agreement conclusively established that Garza did not rely on any representations made by State and County in entering into that agreement, summary judgment was proper and we overrule Garza's second issue.  Having overruled Garza's issues, we affirm the trial court's judgment.

 SUE WALKER

 JUSTICE

PANEL B: HOLMAN, GARDNER and WALKER, JJ.

DELIVERED: April 19, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Garza did sign and return the proposed release sent by Underwriters, but she first modified it without the approval or consent of Underwriters.  Underwriters apparently did not accept Garza’s modifications.

3:
The record demonstrates, however, that only State and County’s corporate representative knew that this was to be a comprehensive release.  In his deposition, the attorney retained by State and County to draft and execute that release testified that he understood that the release was solely on behalf of the Wellington claim. 

4:
In his deposition, Garza’s attorney testified that when he took the check to Garza to secure her endorsement, he advised her that it was a settlement check for the Wellington policy. 

5:
Rule 87(2)(a) refers to section 15.001 as the "General Rule" regarding venue; however, that section was renumbered as section 15.002 in 1995.  
Tex. Civ. Prac. & Rem. Code Ann
. § 15.001 historical note (Vernon 2002) (Act of May 8, 1995, 74th Leg., R.S., ch. 138, 1, 1995 Tex. Gen. Laws 978, 979).

6:
Although Garza also asserted a breach of contract claim, she later dropped that claim and pursued only her fraud claim.

7:
Garza later nonsuited Jose Mascorro.